UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
GUY MARGEL, EGL CERTIFICATE B.V.B.A, :
EUROPEAN GEMOLOGICAL LABORATORIES :
S.A. (PTY) LTD and E.G.L. – EUROGEM :
LABORATORIES (ISRAEL) LTD., :
              Plaintiffs, :      04 Civ. 1514 (PAC)
               :
- against - :      OPINION
               :      AND ORDER
E.G.L. GEM LAB LTD., NACHUM :
KRASNIANSKI, and MARK GERSHBURG, :
            Defendants. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
E.G.L. GEM LAB LTD., NACHUM :
KRASNIANSKI, MARK GERSHBURG, and :
SHAINDY JACOB, :
            Counterclaim Plaintiffs, :
               :
- against - :
               :
GUY MARGEL, EGL CERTIFICATE B.V.B.A, :
EUROPEAN GEMOLOGICAL LABORATORIES :
S.A. (PTY) LTD, E.G.L. – EUROGEM :
LABORATORIES (ISRAEL) LTD., T.C.R. VAN :
SCHOONBEEK and GUY BENHAMOU, :
            Counterclaim Defendants. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

        HONORABLE PAUL A. CROTTY, United States District Judge:

        This action arises out of a dispute between Plaintiff and Counterclaim Defendant Guy Margel ("Margel"), the founder of the European Gemological Laboratories ("E.G.L."), an international network of gem grading laboratories, and three member laboratories of that network ("the Margel Labs"), and Defendant and Counterclaim Plaintiff E.G.L. Gem Lab Ltd. ("EGL-USA"), an independent laboratory which purchased all E.G.L. trademarks in the United States from Margel in 1986. Notwithstanding the purchase, Plaintiffs are said to be using the E.G.L. trademarks in

advertising their services in U.S. trade publications and introducing foreign E.G.L. gem grading certificates into the United States.  EGL-USA and certain of its officers have taken steps to prevent those activities.  Further, Defendants have stopped paying a fee to Margel of $1.25 per gem grading certificate issued in the United States (the "certificate fees").  Margel claims that EGL-USA breached two contracts with him by not paying the certificate fees, and now moves for summary judgment on this peripheral claim.

## RELEVANT FACTS[1]

**I. The 1986 Agreements**

On January 1, 1986, Margel, Margel's New York laboratory, and EGL-USA's predecessor-in-interest entered into a number of agreements (the "1986 Agreements") transferring the assets of the New York laboratory to EGL-USA.  The 1986 Agreements also transferred the U.S. trademarks for E.G.L. to EGL-USA, though Margel retained a license to use the trademarks in the Los Angeles area.  Margel also signed a personal agreement under which he would provide EGL-USA with diamond grading certificates on demand, and would receive $1.25 per certificate issued by EGL-USA (the "certificate fees").  This personal agreement also stated that Margel agreed to "perform consulting services."  Declaration of Guy Margel ("Margel Dec."), Exhibit C, GM000034.  Between 1986 and 1997, EGL-USA received certificates from Margel and paid him the certificate fees.  Margel did not, however, provide any consulting services.

---

[1] These facts are derived from the Complaint and the parties' Local Rule 56.1 Statements and supporting evidentiary material.  Sources will be cited only when quoted.  Facts are undisputed unless otherwise indicated.

2

**II. The 1998 Agreements**

In 1997, EGL-USA ceased paying Margel the certificate fees and filed suit for trademark infringement in this Court against Margel and his sub-licensee in Los Angeles, Robert Tashey.  The dispute between Margel and EGL-USA was arbitrated pursuant to a clause in the 1986 Agreements, and the parties ultimately settled the matter in November 1998.  This settlement took the form of two complimentary agreements: a Settlement Agreement and an Agreement in Principle (the "1998 Agreements").

The 1998 Agreements affirmed that Margel "[wa]s and remain[d] entitled" to the certificate fees, and included a $46,300 payment from EGL-USA to Margel for the fees not paid since 1997. Margel Dec., Exhibit E, EGLUSA01621, ¶ 1.  Margel and Defendant and Counterclaim Plaintiff Nachum Krasniaski ("Krasniaski"), the President of EGL-USA, were required to implement a uniform quality assurance program in all EGL laboratories world-wide.  Finally, Margel agreed to "transfer or surrender…any and all rights and claim to rights he may have to the license and use of the EGL marks…anywhere in the United States…." Id. at ¶ 4.  EGL-USA ceased using certificates provided by Margel in and around 1999, but paid Margel the promised certificate fees until early 2004.  No uniform quality assurance program was ever implemented.

**III. The Margel Labs' Use of the E.G.L. Trademarks in the United States**

There is no dispute that at least one of the Margel Labs, E.G.L. – Eurogem Laboratories (Israel) Ltd., advertised in *Rappaport Diamond Report*, a trade publication in the United States, using the E.G.L. trademarks, and that other labs sought to advertise in *New York Diamonds*, a similar publication.   It is also undisputed that the Margel Labs

introduced their own gem grading certificates, using the E.G.L. trademark, into the United States, and that some of those certificates were provided to Coral Diamond Inc. ("Coral"), a Los Angeles diamond dealer.

EGL-USA presents Krasniaski's declaration that the company learned of the use of the trademarks in advertisements in late 2002.  Krasniaski also declares that EGL-USA had been aware over the years of a very limited number of Margel Labs certificates entering the U.S., and believed them to be "single items that had been sold and resold in foreign commerce."  Declaration of Sarah C. Hsia ("Hsia Dec."), Exhibit A. ("Krasniaski Dec.") ¶ 42.  At some point shortly before 2003, however, EGL-USA noticed an allegedly significant rise in the number of such certificates in the U.S. market.  Finally, EGL-USA maintains that it learned of large numbers of certificates provided to Coral by EGL Certificate B.V.B.A, the Belgian laboratory in which Margel maintains his office.  EGL-USA presents copies of blank foreign E.G.L. certificates seized from Coral pursuant to a court order, and testimony from Nassir Jacobson ("Jacobson"), the owner of Coral, that EGL Certificate B.V.B.A provided Coral with blank E.G.L. certificates and allowed Coral to replicate the signature of T.C.R. van Schoonbeck ("van Schoonbeck"), the Executive Director of EGL Certificate B.V.B.A.  Jacobson and van Schoonbeck both claim that the sole use of the certificates and signature was to replicate lost or damaged certificates originally created outside the United States.

Krasniaski declares that EGL-USA complained to both Margel and the director of the Israeli Margel Lab regarding the advertisements using the E.G.L. trademarks.  Defendant and Counterclaim Plaintiff Mark Gershburg, the Chief Executive Officer of EGL-USA, makes a similar assertion.  There is no evidence in the record as to

whether EGL-USA complained to Margel or alerted him to the introduction of the certificates.

## DISCUSSION

### I. Summary Judgment Standard

A motion for summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment should only be granted if "the nonmoving party 'has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof'." Berger v. United States, 87 F.3d 60, 65 (2d Cir. 1996) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). In ruling on a motion for summary judgment, the Court must "resolve all ambiguities and draw all factual inferences in favor of the nonmoving party." McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006) (citation omitted). Summary judgment should not be granted where issues of fact are "genuine," and "a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

### II. Margel's Breach of Contract Claim

To maintain a breach of contract action under New York law,[2] a plaintiff must demonstrate (1) the existence of a contract; (2) that plaintiff performed under the contract; (3) breach by the other party; and (4) resulting damages. Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525 (2d Cir. 1994). The second element, plaintiff's own

---

[2] The parties agree that New York law governs both the 1986 and 1998 Agreements.

5

performance, can also be satisfied by a showing that his performance was waived by the defendant. Lower v. Village of Watkins Glen, 17 A.D.3d 829, 831, 794 N.Y.S.2d 140, 142 (3rd Dept. 2005).  As a general matter, a party with knowledge of another's breach of contract waives the breach unless it either gives notice to the breaching party or ceases performing and accepting the benefits of the contract. National Westminster Bank, U.S.A. v. Ross, 130 B.R. 656, 675 (S.D.N.Y. 1991).

There is no apparent dispute that both the 1986 and 1998 agreements require EGL-USA to pay Margel the certificate fees, and that EGL-USA stopped making such payments early in 2004, damaging Margel.  For purposes of this motion, the Court assumes that the first, third and fourth elements of Margel's contract claim are satisfied. EGL-USA argues, however, that Margel failed to perform three contractual obligations arising from the 1986 and 1998 Agreements: (1) to act as a consultant to EGL-USA; (2) to establish a quality assurance program at the Margel Labs; and (3) to cease his use of the EGL trademarks in the United States.

The Court need not review the evidence on the parties' contractual obligations of consulting or quality assurance because it is clear that there are factual questions concerning the use of the E.G.L. trademarks in the United States.

The 1998 Agreements required Margel to "surrender…any and all rights and claim to rights he may have to the license and use of the EGL marks…anywhere in the United States…." Margel Dec., Exhibit E, EGLUSA01621 at ¶ 4.  In addition, the implied covenant of good faith and fair dealing requires that "neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." Dalton v. Educational Testing Service, 87 N.Y.2d 384,

6

389 (1995) (citation omitted).  EGL-USA argues persuasively that a contract term requiring a surrender of rights to a trademark necessarily includes a requirement that the surrendering party refrain from subsequent use of that trademark.  At a minimum, any use of the trademark by Margel would frustrate EGL-USA's ability to exploit what it had acquired.

Margel concedes that the Margel Labs have advertised in U.S. trade publications, using the E.G.L. trademarks, and introduced gem grading certificates bearing the E.G.L. trademark into the United States.  There is evidence that EGL-USA officers complained to Margel and the directors of the Margel Labs regarding the advertising.  These complaints create genuine issues of material fact as to whether EGL-USA adequately notified Margel of its position that this use of the trademarks constituted a breach of the 1998 Agreements, preventing waiver of Margel's obligations.  Margel argues, however, that the advertising and introduction of certificates were carried out by the Margel Labs rather than Margel himself, and that these activities did not constitute use of the trademarks in the United States within the meaning of the 1998 Agreements.  Both arguments are inadequate support for Margel's summary judgment motion.

Even if Margel could establish that the Margel Labs were the entities directly responsible for the use of the E.G.L. trademarks, and that they were not signatories to the 1998 Agreement, there is more than sufficient evidence to allow a reasonable fact-finder to conclude that Margel controlled the Margel Labs.  See e.g., Margel Dec. ¶ 3.  Hsia Dec. Exhibit E. ¶ 1.  The fact that a non-signatory breached the agreement is irrelevant if Margel controls the non-signatory.

Margel's second argument is that he has the right to provide diamond services outside the United States, and in consequence to advertise his overseas services in U.S. publications, and to introduce certificates into the United States representing gem grading done overseas. This is an interesting argument, but there is no evidence to show that this was the intent or understanding of the parties, and the plain meaning of the contract does not compel this conclusion. Drawing all inferences in favor of the non-moving party, the Court cannot possibly agree that Margel is entitled to a judgment, as a matter of law, that the actions of the Margel Labs were consistent with the 1998 Agreements.

## CONCLUSION

Since there are numerous genuine issues of material fact concerning the contracts between the parties, the motion for partial summary judgment must be DENIED. The Clerk of the Court is directed to close out this motion.

Dated: New York, New York
       May 24, 2007

SO ORDERED

*[signature]*
PAUL A. CROTTY
United States District Judge