UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

GUY MARGEL, et al.,                 :

            Plaintiffs,             :    04 Civ. 1514 (PAC)(HBP)

    -against-                       :    OPINION
                                         AND ORDER
E.G.L. GEM LAB LTD., et al.,        :

            Defendants.             :

----------------------------------X

            PITMAN, United States Magistrate Judge:


I.  Introduction


            I write to resolve three discovery disputes pending

among the parties:  (1) defendants' application for a finding

that plaintiffs have failed to respond fully to defendants'

requests for the production of documents; (2) plaintiffs' appli-

cation to compel defendants to produce additional documents, and

(3) defendants' application to continue the deposition of Thomas

van Schoonbeek and to compel the production of Monique

Krautstengel for deposition.[1]

            For the reasons set forth below, (1) defendants'

application for a finding that plaintiffs have failed to respond

fully to defendants' requests for the production of documents is

---

[1]All the discovery disputes resolved by this Order have been
raised by letter.  There are no docketed motions that correspond
to the issues addressed herein.

denied; (2) plaintiffs' application to compel E.G.L. Gem Lab Ltd. ("EGL-USA") to produce additional documents is granted to the extent that (a) no later than ten (10) business days from the date of this Order, EGL-USA is to either produce or make other- wise available to plaintiffs that part of its electronic database that evidences the issuance of certificates for the period from January 1, 2002 through the present and (b) no later than ten (10) days from the date of this Order, EGL-USA is to produce documents evidencing its sales, revenues, net income figures as well as documentary support for any other damages it claims as a result of plaintiffs' actions since January 1, 2000, and (3) defendants' application to continue the deposition of Thomas van Schoonbeek and to compel plaintiffs to produce Monique Krautstengel to be deposed is denied.

II.  Facts Giving Rise to
     the Parties' Claims

        This is an action among gem grading laboratories and their principals concerning, in essence, the right to use certain trademarks in the United States and the right to issue grading certificates that bear those marks.

        In 1974, plaintiff Guy Margel opened an international gem grading business.  The business eventually grew to include gem grading facilities in Belgium, South Africa, France, Turkey, England, Israel, India, South Korea and the United States.

Margel registered the trademarks EUROPEAN GEMOLOGICAL LABORATORY and E.G.L. (collectively, the "EGL Marks") for use in connection with his gem grading business. In January 1986, Margel sold the assets and the business of his lab in the United States, which was named European Gemological Laboratory, Inc., to N.K. Gemological Services, Inc., which was wholly owned by defendant Krasnianski. As part of the transaction, the resulting entity -- E.G.L. Gem Lab Ltd. ("EGL-USA") -- acquired the right to use Margel's United States trademarks throughout the United States except for the Los Angeles area where Margel retained the right to use the marks. The agreements executed at that time also provided that (1) Margel would provide EGL-USA with grading certificates on demand, (2) EGL-USA would pay Margel $1.25 for each certificate that it issued and (3) Margel would also perform consulting services for EGL-USA.

A dispute among the parties arose in 1997 that was resolved through arbitration. The material terms of the arbitration decision provided that unpaid certificate fees would be paid, Margel would continue to receive certificate fees, Margel and EGL-USA would institute a uniform quality assurance program worldwide and Margel would surrender to EGL-USA any rights he had to use the EGL Marks anywhere in the United States.

Although Margel's diamond grading facilities are located overseas, Margel's laboratories advertise their grading

services in periodicals that are distributed in the United States and his own grading certificates, bearing the EGL Marks, have been introduced into the United States.

Plaintiffs allege that despite the fact that their uses of EGL Marks is entirely lawful, defendants have engaged in a publicity campaign that mischaracterizes plaintiffs' activities as illegal and has resulted in the tarnishing of plaintiffs' professional image. Plaintiffs also allege that since 2004, defendants have failed to pay the $1.25 for each certificate EGL-USA issued. In their counterclaims, defendants allege that plaintiffs are using the EGL Marks in the United States illegally, thereby committing trademark infringement, dilution and a number of other torts and damaging defendants' goodwill.

III. Defendants'
     Document Request

Defendants first contend that plaintiffs have failed to respond fully to plaintiffs' request for the production of documents and that sanctions should be imposed.

I conducted discovery conferences concerning plaintiffs' document production on both November 20, 2005 and January 30, 2006. After hearing defendants' claims of alleged deficiencies at the November 2005 conference, including the fact that plaintiffs' total production of documents consisted of less than 200 pages, I directed plaintiffs' counsel to reconfirm with his

client that document production was complete and to provide affidavits or affirmations from the principals of the laboratories in Belgium, Israel and South Africa attesting that each had read defendants' document request and that all responsive documents had been produced. Such affirmations were submitted to defendants' counsel in December 2005.

In January 2006, plaintiffs retained new counsel, and a second conference concerning plaintiffs' document production was held on January 30. At that conference, defendants' counsel went through the alleged deficiencies in plaintiffs' response to defendants' document request item by item. After this conference, plaintiffs' new counsel supplemented plaintiffs' document production with approximately 800 pages of documents and represented to me that the all responsive, non-privileged documents have been produced (see Letter of Paul H. Schafhauser, Esq. to the undersigned, dated Mar. 16, 2006). Despite this supplementation, defendants still claim that plaintiffs' document production is deficient. With one exception discussed below, however, defendants never explain the factual basis for their belief that plaintiffs' production, as supplemented, is deficient.

The one specific piece of evidence cited by defendants in support of their contention that plaintiffs' production is deficient is testimony from Thomas van Schoonbeek in which he

stated that the diamond grading facility in Belgium maintained computers into which it entered data concerning the grading of stones, that the computers were kept for three years and then discarded and that no effort was made to retrieve or preserve this data before the computers were discarded. van Schoonbeek testified that the data entered into the computers consisted of a code number representing the customer, the weight, measurements, color and clarity of the stone, and whether the customer re-quested a grading certificate for the stone. van Schoonbeek further testified that there was no document that correlated customer identification numbers to actual customer identities. van Schoonbeek did, however, unequivocally testify that the Belgium facility did not grade any diamonds for customers located in the United States. Although defendants cite van Schoonbeek's testimony as proof that plaintiffs' document responses are deficient, they do not identify any specific document requests calling for the computerized information described by van Schoonbeek.[2]

Although I appreciate defendants' concern about plain-tiffs' production, I do not believe that there is any basis for

---

[2]Defendants also cite testimony van Schoonbeek's that he was not aware of anyone searching the Belgium facility for documents responsive to defendants' document requests. As plaintiffs correctly point out, however, after seeing additional documents, van Schoonbeek corrected his testimony and stated that a search for documents at the Belgium facility had been conducted.

an award of sanctions. Defendants do not point to any specific
evidence suggesting that additional responsive documents exist
and have not been produced. Litigants commonly suspect that they
are not getting all the documents they have requested and that an
adversary is holding something back. That suspicion, however,
will not sustain the imposition of sanctions. "Under ordinary
circumstances, a party's good faith averment that the items
sought simply do not exist, or are not in his possession, custody
or control, should resolve the issue of failure of production . .
. ." Zervos v. S.S. Sam Houston, 79 F.R.D. 593, 595 (S.D.N.Y.
1978); see Golden Trade S.r.L. v. Lee Apparel Co., 143 F.R.D.
514, 525 n.7 (S.D.N.Y. 1992) ("In the face of a denial by a party
that it has possession, custody or control of documents, the
discovering party must make an adequate showing to overcome this
assertion."); 8A Charles A. Wright, Arthur R. Miller & Richard L.
Marcus, Federal Practice & Procedure § 2213 at 425-26 (2d ed.
1994) (footnotes omitted); see also Jackson v. Edwards, 99 Civ.
982 (JSR)(HBP), 2000 WL 782947 at *3-*4 (S.D.N.Y. June 16, 2000);
Morris v. DeMarzo, 98 Civ. 7353 (RLE), 2000 WL 1608719 at *1
(S.D.N.Y. June 12, 2000); Doe v. Karadzic, 93 Civ. 878
(PKL)(HBP), 93 Civ. 1163 (PKL)(HBP), 1997 WL 45515 at *6-*7
(S.D.N.Y. Feb. 4, 1997). Since defendants do not cite any
specific evidence impugning plaintiffs' assertions that their
production is complete, there is no basis for a finding of

7

misconduct on the part of the plaintiffs or an award of sanctions.

Defendants' reliance on van Schoonbeek's testimony does not alter the foregoing.  Defendants do not cite, and my own analysis has not disclosed, any document request that would be implicated by van Schoonbeek's testimony.  There is no document request seeking all documents concerning the grading of stones by the Belgian facility, and the records do not appear to be relevant to the claims or defenses in this matter.  Under these circumstances, it does not appear that plaintiffs were under any obligation to maintain the computer records.  See Danna v. New York Tel. Co., 752 F. Supp. 594, 616 n.9 (S.D.N.Y. 1990).

Although it is not sanctionable, plaintiffs' initial failure to respond completely to defendants' document request does deserve comment.  Document production under the Federal Rules of Civil Procedure is intended to take place without judicial intervention.  8A Charles A. Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice & Procedure § 2288 at 655-56 (2d ed. 1994) ("A major purpose of the 1970 revision of the discovery rules was to encourage extrajudicial discovery with a minimum of court intervention.").  In this case, it was not until defendants made the application that resulted in the January 30, 2006 conference that plaintiffs finally completed their document production.  It is noteworthy that after the January, 2006

conference plaintiffs produced more than four times the documents they had previously produced; thus, this case did not involve a situation where a handful of documents was inadvertently omitted from a party's production.  Although none of this delayed production is attributable to plaintiffs' current counsel,[3] the defendants should not have had to make repeated applications to the Court to get these documents.

Since plaintiffs failed to make production when they should have and compelled defendants to make several applications to the court, I find that it is appropriate to make an award of the attorney's fees to defendants for the fees they incurred through January 30, 2006 in connection with their efforts to obtain plaintiffs' documents.  The award is made pursuant to Fed.R.Civ.P. 37(a)(5)(A).  Defendants are to make their fee application no later than ten (10) business days from the date of this Order; plaintiffs shall have ten (10) business days to respond.

IV.  Plaintiffs'
     Document Request

Plaintiffs raise two issues with respect to the completeness of EGL-USA's document production.  First, plaintiffs

---

[3]It appears that plaintiffs' present counsel took the appropriate steps to remedy promptly the deficiencies in its predecessor's work.

seek to compel EGL-USA to produce all documents in its possession custody or control relating to the grading certificates or reports issued by EGL-USA for the period from January 1, 2000 to the present. Second, plaintiffs seek the production of documents evidencing EGL-USA's sales, revenues and net income for the same period.

Plaintiffs seek documents concerning the grading certificates issued in connection with their claim that EGL-USA has failed to pay the $1.25-per-certificate fee owed to plaintiffs under the parties' licensing agreement. The parties' dispute concerning this category of documents has two aspects. First, the parties dispute the time period for which documents should be produced. Second, the parties dispute what documents should be produced.

With respect to the appropriate time period, EGL-USA represents, and plaintiffs do not deny, that it has produced documents reflecting the issuance of grading certificates from January 1, 2002 to the present. Plaintiffs, however, seek to go back an additional two years and compel the production of documents reflecting this information from January 1, 2000 to the present. Plaintiffs' complaint does not allege that EGL-USA failed to pay the per-certificate fee until 2004, and plaintiffs offer no justification for the production of documents that pre-date the period of EGL-USA's alleged breach.

The discovery provisions of the Federal Rules of Civil Procedure provide several different mechanisms for parties to flesh out the facts concerning the claims or defenses that they have.  It is not appropriate for a party to use the discovery provisions to determine whether or not it has a claim.  Paddington Partners v. Bouchard, 34 F.3d 1132, 1138 (2d Cir. 1994) ("Econocom's argument is that it should be allowed to find out if it has a claim, rather than that it has a claim for which it needs additional discovery.  Such divagation is decidedly not the object of the discovery procedures outline in the Federal Rules of Civil Procedure."); Matos v. Hove, 940 F. Supp. 67, 72 (S.D.N.Y. 1996) ("[I]t is clear that under Federal Rule of Civil Procedure 26, plaintiffs may not use discovery to determine whether they have a claim."); Avnet, Inc. v. Am. Motorists Ins. Co., 115 F.R.D. 588, 592 (S.D.N.Y. 1987) ("The discovery rules are not a hunting license to conjure up claim that does not exist."); In re WorldCom, Inc., 368 B.R. 308, 323 (S.D.N.Y. 2007) ("A party must already have a claim for which it seeks additional discovery, as discovery is not meant to allow a party to find out if it has a claim." (inner quotations omitted)).  Since plaintiffs do not allege that EGL-USA failed to pay the per-certificate fees in 2000 and 2001 and they offer no theory of relevance,

they are not entitled to conduct discovery regarding this time period.[4]

With respect to the scope of the EGL-USA's production, EGL-USA has produced reports prepared from databases it main-tains.  Specifically, EGL-USA has submitted an affirmation from the Director of its New York laboratory, in which he states:

> 4.  Employees under my supervision create reports from the EGL USA databases which show the number of certificates issued by EGL USA since 2002.  These reports contain the most accurate information available to EGL USA regarding the number of certificates EGL USA has issued since 2002.
>
> 5.  There are no other documents in EGL USA's possession, custody or control that contain information regarding the number of certificates EGL USA has issued since 2002.

(Declaration of Mitchell Jakubovic, dated Aug. 10, 2007 and annexed as Exhibit D to EGL-USA's Response to Plaintiffs' Motion to Compel ("Jakubovic Aff.") ¶¶ 4-5).  It also appears that EGL-USA retains "worksheets" for each stone that it grades, but that the worksheets do not indicate whether a certificate was issued.  According to EGL-USA, the only way to determine whether a certif-icate was issued for a particular stone is to compare the number of the stone recorded on the worksheet with the computerized

---

[4]Although documents concerning the certificates issued by EGL-USA in 2002 and 2003 are also irrelevant, it appears that EGL-USA has agreed to disclose this information.  I shall not <u>sua sponte</u> upset the parties' agreement.

database used to generate the report described above (Jakubovic
Aff. ¶ 9).

In light of the foregoing, the remaining issue is
whether EGL-USA must produce to plaintiffs the electronic data
from which the report was generated.  I conclude that it must.
It is beyond question that as used in Rule 34, the term "docu-
ment" includes all forms of recorded information,   Fed.R.Civ.P
34(a)(1)(A); 2 Michael C. Silberberg, Edward M. Spiro & Judith L.
Mogul, Civil Practice in the Southern District of New York § 22:3
(2d ed. 2007), and the electronic database is, therefore, subject
to production pursuant to Rule 34.  It is also beyond question
that if a document is requested and relevant, the requesting
party is entitled to all non-identical copies.  See Local Civil
Rule 26.3(c)(2); Zubulake v. UBS Warburg LLC, 217 F.R.D. 309, 317
(S.D.N.Y. 2003) (Scheindlin, J.) ("[E]lectronic documents are no
less subject to disclosure than paper records.")
Finally, it is also beyond question that the report produced in
discovery could not even be admitted on EGL-USA's motion unless
the underlying data were produced to plaintiffs.  Fed.R.Evid.
1006.

EGL-USA makes no claim that its electronic database is
not "reasonably accessible," see Fed.R.Civ.P 26(b)(2)(B); it
appears that EGL-USA's only objection is that the database is
redundant of the information that has already been produced.  I

do not find that objection to be persuasive in light of the fact that information maintained in an electronic database is necessarily in a form that is not identical to a report prepared on the basis of that data and should, therefore, ordinarily be produced.  See Member Servs., Inc. v. Sec. Mut. Life Ins., 3:06-CV-1164 (TJM/DEP), 2007 WL 2907520 at *1 (N.D.N.Y. Oct. 3, 2007) (party ordered to produce paper and electronic copies of same documents); Advisory Committee Note to 2006 amendment to Rule 26(b)(2) ("Under this rule, a responding party should produce electronically stored information that is relevant, not privileged, and reasonably accessible, subject to the (b)(2)(C) limitations that apply to all discovery.").

Accordingly, no later than ten (10) business days from the date of this Order, EGL-USA is to either produce or make otherwise available to plaintiffs so much of its electronic database as evidences the issuance of certificates for the period from January 1, 2002 to the present.

Plaintiffs' second issue with EGL-USA's production is the latter's refusal to produce documents reflecting its sales, revenues, net incomes and damages (lost profits or diminution of goodwill) for the period from January 1, 2000.  Plaintiffs have sought these documents in connection with EGL-USA's counterclaim alleging that plaintiffs' illegal use of the EGL Marks trademarks in the United States has damaged EGL-USA's business.  In an

effort to resolve this dispute, EGL-USA has agreed to forego any damages based on its own lost profits or lost sales. It has not, however, limited any claim for damages to plaintiffs' profits. EGL-USA still seeks to retain the right to recover for damage to its goodwill. I conclude that EGL-USA's sales, revenues, net incomes and lost profits are relevant to goodwill and that the information is, therefore, discoverable.

EGL-USA has suggested that "'[g]ood will is a business value that reflects the basic human propensity to continue doing business with a seller who has offered goods and services that the customer likes and has found adequate to fulfill his needs'" (EGL USA's Response to Plaintiffs' Motion to Compel, dated Aug. 10, 2007 at 5, quoting 1 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 2:17 (4th ed. 2007)). Assuming, without deciding, that the definition that EGL-USA proffers is correct,[5] this definition establishes the relevance of the financial information plaintiffs seek. If goodwill is the propensity, or willingness, of customers to continue doing business with an entity, sales and profits are relevant to claimed loss of goodwill. If, as EGL-USA alleges, plaintiffs' activities caused EGL-

---

[5]I note in passing that there are a number of judicial definitions of goodwill, at least one of which defines good will as a business's annual profits multiplied by a number of years. 1 J. Thomas McCarthy, McCarthy on Trademarks & Unfair Competition § 2:23 at 2-47 (4th ed. 2008). If this formula were applied to this case, the relevance of the information sought could not be clearer.

15

USA to lose goodwill, that loss should be reflected by a loss in EGL-USA's sales and profits. Conversely, if EGL-USA's sales and profits remained constant or increased during the period of the alleged infringement by plaintiffs, it makes it less likely that there was an injury to EGL-USA's goodwill. Admittedly, the financial information plaintiffs seek may not be dispositive. The behavior of consumers is, no doubt, influenced by a number of variables other than plaintiffs' alleged presence in the market place, and upward- or downward-trending sales figures may have explanations independent of plaintiffs' activity. Evidence need not, however, be dispositive to be discoverable; so long as the evidence makes the disputed proposition less likely or more likely, it is relevant and discoverable.

EGL-USA has suggested in its papers that it will establish the damage to its goodwill by testimony from its customers, former customers and potential customers (EGL USA's Response to Plaintiffs' Motion to Compel, dated Aug. 10, 2007 at 5). Whether such evidence will be admissible and the probative force it will have will ultimately be questions for trial. EGL-USA's reliance on such evidence, however, does not preclude plaintiffs from offering relevant evidence in rebuttal, and evidence of increasing or constant sales and profits would constitute relevant rebuttal evidence.

Accordingly, no later than ten (10) days from the date of this Order, EGL-USA is to produce its sales, revenues, net incomes figures as well as figures for any other damages it claims as a result of plaintiffs' actions since January 1, 2000.[6]

V.  Defendants' Application
    to Continue the Deposition
    of Thomas van Schoonbeek and
    to Depose Monique Krautstengel

Finally, defendants seek to continue the deposition of Thomas van Schoonbeek and to depose Monique Krautstengel.

van Schoonbeek is the Executive Director of plaintiff/counterclaim defendant E.G.L. Certificat B.V.B.A ("EGL Belgium").  van Schoonbeek was deposed in this matter on July 11, 2007 in Antwerp, Belgium.  That deposition started at approximately 10:27 a.m. and the testimony concluded at 8:48 p.m., with a luncheon break of approximately one hour and thirteen minutes. The transcript of the testimonial portion of the deposition spans approximately 358 pages which I have carefully reviewed.  Although the conduct of the individuals attending the deposition was not perfect, it cannot be fairly characterized as obstructionist or seriously improper.  There were occasions on which counsel defending the deposition gratuitously stated the grounds

_____

[6]I conclude that the relevant time period for this element of discovery runs from January 1, 2000 so that EGL-USA's performance prior to plaintiffs' alleged infringement can be assessed.

for his objections, and Guy Margel -- a party to this action who attended the deposition -- also made sporadic comments on the record in response to the some of the questions to van Schoonbeek. The objections, however, were not particularly argumentative, were usually short and did not really obstruct the deposition. Similarly, Margel's comments were usually limited to a word or two and were usually made after van Schoonbeek answered the pending question. I note that there were long passages of uninterrupted questions and answers; indeed, there were very few interruptions during the first 100 pages of the transcript. To their credit, the behavior of counsel at the deposition was far better than the conduct of counsel at many other depositions, and counsel defending the deposition did not engage in any conduct that frustrated the examination.

van Schoonbeek left the premises at which the deposition was being conducted at approximately 9:15 p.m. after complaining that he was not feeling well. When the deposition concluded, defendants' counsel stated that he had approximately another thirty minutes of questions, and plaintiffs' counsel offered to produce van Schoonbeek the following day to continue these questions. Amazingly, however, defendants' counsel declined the offer.

Defendants' counsel claims that van Schoonbeek's testimony should be continued but does not identify the addi-

tional areas he wishes to cover.  Even more importantly, defen-
dants' counsel does not explain why he did not use the approxi-
mately nine hours he had more efficiently.  Counsel spent an
inordinate amount of time exploring how a typical grading trans-
action was conducted at EGL Belgium, even getting into such
minutiae as the type of equipment used.  Counsel also spent a
substantial amount of time exploring how grading was done at
other EGL facilities.  At another point, counsel asked van
Schoonbeek to speculate about why his customers sought to have
their diamonds appraised.  Based on the transcript, the foregoing
testimony, all tolled, consumed well over a quarter of the
deposition, which, I believe, was excessive.  Counsel elicited an
unnecessary amount of detail and could have conducted his exami-
nation far more efficiently.  In addition, if defendants' counsel
really believed additional time was necessary to complete van
Schoonbeek's deposition, it is difficult to understand why he
turned down plaintiffs' counsel's offer to continue the following
day.  I have not overlooked the fact that van Schoonbeek claimed
that he felt unwell after nine hours of questioning and appar-
ently left the site of the deposition assisted by paramedics.
However, all that this establishes is that his ability to con-
tinue on the following day was unknown; it does not establish an
inability to continue.  If van Schoonbeek's testimony is as
important as defendants now claim, it is impossible to understand

why defendants' counsel was unwilling to wait one day in Antwerp to permit a more informed determination concerning van Schoonbeek's ability to proceed.

The 2000 amendments to Rule 30(d)(2) established a presumptive time limit of seven hours for depositions, with the proviso that this period can be extended for good cause shown. The determination of whether good cause exists is fact specific. <u>Carmody v. Vill. of Rockville Ctr.</u>, CV-05-4907 (SJF)(ETB), 2007 WL 2177064 at *2 (E.D.N.Y. July 27, 2007). In a case such as this, where the witness does not need to be examined concerning a large number of documents and there is no need to use an interpreter, factors relevant to the determination of good cause would ordinarily include whether the time previously afforded for the deposition was used efficiently and whether there are additional relevant areas of inquiry. Since it does not appear that defendants can make the appropriate showing with respect to either, their application to continue van Schoonbeek's deposition is denied.

Defendants application to compel plaintiff to produce Monique Krautstengel for a deposition is also denied. As I previously explained in this matter, with respect to corporate parties, depositions pursuant to Rule 30 are available only with respect to officers, directors or managing agents. Employees other than officers, directors or managing agents can be deposed

only by stipulation or through the use of the procedures applicable to the depositions of non-parties.  See Margel v. E.G.L. Gem Lab Ltd., 04 Civ. 1514 (SHS)(HBP) at 2-7 (S.D.N.Y. Nov. 14, 2005).  The party asserting that a witness is an officer, director or managing agent bears the burden of proving that proposition.  Sugarhill Records Ltd. v. Motown Record Corp., 105 F.R.D. 166, 170 (S.D.N.Y. 1985).

At his deposition, van Schoonbeek described Krautstengel's duties as "only administrative.  She goes through the balance sheet, . . . to go to put letters in the post, to go to the bank, prepare envelopes or certificates.  Things like that" (Deposition of Thomas van Schoonbeek at 21, annexed to the letter of Robert E. Hanlon, Esq., dated Aug. 14, 2008).  Based on the foregoing, it appears that Krautstengel does not possess any executive authority.  She can, therefore, be deposed only through the mechanisms available to depose non-party witnesses, and defendants' motion to compel plaintiffs to produce her for a deposition is denied.

Defendants cite three cases in support of their contention that a corporate party can be compelled to produce employees for deposition.  I do not find these authorities convincing.  Two of the orders appear to be the result of the corporate parties' consent, rather than the result of an adjudication.  In re Med. X-ray Film Antitrust Litig., CV-93-5904, 1997 WL 33320580 at *6

(E.D.N.Y. Dec. 26, 1997); <u>S.E.C. v. Drexel Burnham Lambert, Inc.,</u>
88 Civ. 6209 (MP), 1989 WL 90165 at *23 (S.D.N.Y. June 20, 1989).
Thus, these two cases do not support the proposition that a court
can order a corporation to produce an employee for a deposition
over the corporation's objection.  In the third case, <u>I.K.</u>
<u>Holding Corp. v. Dorothy's Ruffled Originals, Inc.,</u> 90 Civ. 8254
(LMM), 1992 WL 15003 at * 1 (S.D.N.Y. Jan. 21, 1992), the Court
did order the corporation to produce employees for deposition
with no discussion.  Given the absence of any discussion of the
numerous authorities limiting depositions by notice to officers,
directors and managing agents, I conclude that <u>I.K. Holding</u> is
the product of the  practice in this District under which corpo-
rate parties routinely agree to make employees available for
depositions without subpoenas rather than a judicial determina-
tion that mere employees of a corporation can be compelled to
appear for a deposition pursuant to a Rule 30 notice.

        Thus, EGL-USA's application to continue the van
Schoonbeek deposition and to compel plaintiffs to produce
Krautstengel for deposition is denied.

VI.  <u>Conclusion</u>

        Accordingly, for all the foregoing reasons, I conclude
that (1) defendants' application for a finding that plaintiffs
have failed properly to respond to defendants' requests for the

production of documents is denied; (2) plaintiffs' application to compel EGL-USA to produce additional documents is granted to the extent that (a) no later than ten (10) business days from the date of this Order, EGL-USA is to either produce or make otherwise available to plaintiffs so much of its electronic database that evidences the issuance of certificates for the period from January 1, 2002 through the present and (b) no later than ten (10) days from the date of this Order, EGL-USA is to produce its sales, revenues, net incomes figures as well as figures for any other damages it claims as a result of plaintiffs' actions since January 1, 2000, and (3) defendants' application to continue the deposition of Thomas van Schoonbeek and to compel plaintiffs to produce Monique Krautstengel to be deposed is denied.

Dated: New York, New York
       May 29, 2008

                                   SO ORDERED

                                   _Henry Pitman_ (signature)
                                   _____
                                   HENRY PITMAN
                                   United States Magistrate Judge

Copies transmitted to:

John Malley, Esq.
Barry Werbin, Esq.
Paul Schafhauser, Esq.
Herrick, Feinstein LLP
2 Park Avenue
New York, New York  10016

Robert E. Hanlon, Esq.
Alston & Bird LLP
90 Park Avenue
New York, New York  10016

                    23