UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

GUY MARGEL, et al.,                     :

                    Plaintiffs,    :    04 Civ. 1514 (PAC)(HBP)

     -against-                          :    OPINION AND
                                             ORDER
E.G.L. GEM LAB LTD., et al.,       :

                    Defendants.    :

----------------------------------X


          PITMAN, United States Magistrate Judge:


I.  Introduction

          Defendants move for an award of attorney's fees in the
amount of $19,731.00, pursuant to Fed.R.Civ.P. 37(a)(5)(A).
Plaintiffs, in turn, have filed a letter application seeking the
imposition of sanctions on defendants pursuant to Fed.R.Civ.P.
37(b)(2), as a result of defendants' failure to comply with a
Court Order.  For the reasons set forth below, I grant defen-
dants' motion to the extent that defendants are awarded
$13,512.30 in attorney's fees, and I deny plaintiffs' letter
application for sanctions without prejudice to plaintiffs'
renewal of their application by formal motion.


II.  Facts

          This is an action among gem grading laboratories and
their principals concerning the right to use certain trademarks

in the United States and the right to issue grading certificates that bear those marks.  During the course of discovery, I invited defendants to make an application for the attorney's fees that they had incurred in connection with obtaining certain discovery from plaintiffs.

The events that led to my finding that an award of attorney's fees would be appropriate are as follows.  On November 30, 2005, I held a hearing to resolve outstanding discovery disputes.  At that hearing, plaintiffs' counsel made conflicting representations concerning whether his clients' document produc-tion was complete; I therefore ordered plaintiffs to submit declarations confirming that they had reviewed defendants' document requests and produced all responsive requested documents (Transcript of Hearing, dated Nov. 30, 2005, 73-80, 86).  Plain-tiffs submitted such declarations from two principals and an unresponsive declaration from a third principal (Declaration of Alan Lowe, dated May 11, 2005; Declaration of Guy Margel, dated Dec. 4, 2005; and Declaration of Guy Benhamou, dated Dec. 2, 2005, annexed as Exhibits B and C to EGL USA's Reply to Plain-tiffs' Response to Defendants' Showing at the January 30, 2006 Hearing, dated Feb. 22, 2006).  However, after retaining new counsel who appeared at a January 30, 2006 conference concerning the adequacy of their production, plaintiffs supplemented their responses to defendants' discovery requests and produced addi-

tional responsive documents (Plaintiffs' Response to Defendants' Showing at the January 30, 2006 Hearing, dated Feb. 15, 2006). Following the completion of plaintiffs' supplemental production, I found that it would be appropriate to make an award of atttorney's fees to defendants pursuant to Fed.R.Civ.P. 37(a)(5)(A) for the fees they incurred in connection with their efforts to obtain plaintiffs' documents through January 30, 2006 (Opinon & Order, dated May 29, 2008 (the "May 29 Order"), at 9).

On June 11, 2008, defendants submitted their motion for $19,731.00 in fees.  On or about June 24, 2008, plaintiffs submitted a letter in opposition to defendants' motion.  Plaintiffs' June 24 letter also requested that defendants be sanctioned pursuant to Rule 37(b)(2) for their failure to comply with the May 29 Order (Letter from Paul H. Schafhauser, Esq., dated June 24, 2008 ("Pls.' Resp.") 3-4).  Plaintiffs subsequently submitted a more detailed letter application for sanctions (Letter from Paul H. Schafhauser, Esq., dated June 27, 2008).

III.  <u>Analysis</u>

Plaintiffs do not challenge the propriety of an award of attorney's fees to defendants in this case, but they argue that at least some of the sums sought by defendants were not reasonably expended and should, therefore, be excluded from the fee award (Pls.' Resp. 1-2).

3

A.   Applicable Legal Principles

In determining a "presumptively reasonable fee," the "essential calculation" is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hnot v. Willis Group Holdings Ltd., 01 Civ. 6558 (GEL), 2008 WL 1166309 at *1 (S.D.N.Y. Apr. 7, 2008), quoting Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).[1]   The hours actually expended and the rates actually charged are, of course, not dispositive.

1.   Hours Reasonably Expended

The Honorable George B. Daniels, United States District Judge, has summarized the factors to be considered in assessing the reasonableness of the hours claimed in a fee application:

> It is well established that "any attorney . . . who applies for court-ordered compensation in this Circuit . . . must document the application with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done." New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir.

---

[1]The calculation described in the text was previously described as the "lodestar" calculation.  The Court of Appeals has recently concluded the "value of this term as a metaphor has deteriorated to the point of unhelpfulness" and, at least in one opinion, has abandoned its use.  The Court of Appeals has not, however, required its future panels to abandon the term.  Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 & n.4 (2d Cir. 2008).

1983). . . . . The Court's task is to make "a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." Lunday v. City of Albany, 42 F.3d 131, 134 (2d Cir. 1994).  The critical inquiry is "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992) (citation omitted), cert. denied, 506 U.S. 1053 (1993); accord Nike, Inc. v. Top Brand Co., [00 Civ. 8179 (KMW)(RLE),] 2006 WL 2946472, at *5 (S.D.N.Y. Feb. 27, 2006), adopted by 2006 WL 2884437 (S.D.N.Y. Oct. 6, 2006).

Additionally, if a court finds that claimed hours are "excessive, redundant, or otherwise unnecessary," it should exclude those hours from its . . . calculation.  Hensley [v. Eckerhart, supra], 461 U.S. at 434; accord Quaratino v. Tiffany & Co., 166 F.3d 422, 426 n.6 (2d Cir. 1999); Gierlinger v. Gleason, 160 F.3d 858, 876 (2d Cir. 1998); Luciano v. Olsten Corp., 109 F.3d 111, 116-17 (2d Cir. 1997); In re Stock Exch. Options Trading Antitrust Litig., [99 Civ. 0962 (RCC),] 2006 WL 3498590, at *11 (S.D.N.Y. Dec. 4, 2006). However, the Supreme Court noted in Hensley that "[t]here is no precise rule or formula for making these determinations."  461 U.S. at 436.  And, because "it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application," Carey, 711 F.2d at 1146, "the court has discretion simply to deduct a reasonable percentage of the number of hours claimed 'as a practical means of trimming fat from a fee application,'" Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (quoting Carey, 711 F.2d at 1146).

Yea Kim v. 167 Nail Plaza, Inc., 05 CV 8560 (GBD)(GWG), 2009 WL

77876 at *4 (S.D.N.Y. Jan. 12, 2009); accord McDonald ex rel.

Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund,

450 F.3d 91, 96-97 (2d Cir. 2006); see also Malletier v. Dooney &

Bourke, Inc., 04 Civ. 5316 (RMB)(MHD), 2007 WL 1284013 at *1-*2

(S.D.N.Y. Apr. 24, 2007).

5

The party seeking fees bears the burden of establishing that the number of hours for which compensation is sought is reasonable.  Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994), citing Hensley v. Eckerhart, supra, 461 U.S. at 437; Patrolmen's Benevolent Ass'n of New York v. City of New York, 97 Civ. 7895 (SAS), 98 Civ. 8202 (SAS), 2003 WL 21782675 at *2 (S.D.N.Y. July 31, 2003), citing Blum v. Stenson, 465 U.S. 886, 897 (1984).

### 2.  Reasonable Hourly Rate

The reasonable hourly rate is "the rate a paying client would be willing to pay," bearing in mind "all of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate."  Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, supra, 522 F.3d at 190 (emphasis in original).  The hourly rates used in making a fee award should be market rates "in line with those [rates] prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  Blum v. Stenson, supra, 465 U.S. at 896 n.11; accord Reiter v. MTA New York City Tran. Auth., 457 F.3d 224, 232 (2d Cir. 2006), cert. denied, 127 S.Ct. 1331 (2007).

"By asking what a reasonable, paying client would do, a district court best approximates the workings of today's market for legal services." <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, <u>supra</u>, 522 F.3d at 192.  Thus, the court should not only consider the rates approved in other cases in the district, but should also consider any evidence offered by the parties.  <u>Farbotko v. Clinton Co.</u>, 433 F.3d 204, 208-09 (2d Cir. 2005).  Depending on the case, the market for particular legal services may be defined by a practice area, rather than a geographic area, and the market may not necessarily be coextensive with the district itself.  <u>See</u> <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, <u>supra</u>, 522 F.3d at 192.

> [T]he district court should, in determining what a reasonable, paying client would be willing to pay, consider factors including, but not limited to, the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether the attorney had an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted <u>pro</u> <u>bono</u> (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, supra, 522 F.3d at 184.[2]

The Court is also free to rely on its own familiarity with prevailing rates.  A.R. ex rel. R.V. v. New York City Dep't of Educ., 407 F.3d 65, 79 (2d Cir. 2005); Polk v. New York State Dep't of Corr. Servs., 722 F.2d 23, 25 (2d Cir. 1983).  In all cases, "the fee applicant has the burden of showing by 'satisfactory evidence -- in addition to the attorney's own affidavits' -- that the requested hourly rates are the prevailing market rates." Farbotko v. Clinton Co., supra, 433 F.3d at 209, quoting Blum v. Stevenson, supra, 465 U.S. at 896 n.11.

---

[2]In Arbor Hill, the Court of Appeals confirmed that the district courts could also consider the twelve factors identified in Johnson v. Georgia Highway Express, Inc., 488 F.2d, 714, 717-19 (5th Cir. 1974), in arriving at a reasonable hourly rate. Those factors are:

> (1) the time and labor required; (2) the novelty and the difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Arbor Hill, 522 F.3d at 186-87 n.3, 188.

B.  Calculation of the
    Presumptively Reasonable Fee

Defendants claim a fee of approximately $20,000, based on 47.1 hours of work at hourly rates ranging from $310.00 to $585.00 (Declaration of Robert E. Hanlon, Esq., dated June 10, 2008, annexed to Defendants' Motion for Attorney's Fees, dated June 11, 2008 ("Hanlon Decl."), ¶¶ 4, 8, 10).  In response, plaintiffs characterize both defendants' counsel's time expended and hourly rates as "unreasonable and excessive" (Pls.' Resp. 3). In addition, plaintiffs question the reasonableness of certain specific expenditures of time, though they do not further address the reasonableness of defendants' hourly billing rates.

1.  Hours Expended

"The court's role is not to determine whether the number of hours worked by [the movant's] attorneys represents the most efficient use of resources, but rather whether the number is reasonable."  In re Arbitration Between P.M.I. Trading Ltd. v. Farstad Oil, 160 F. Supp.2d 613, 616 (S.D.N.Y. 2001) (alteration added).  Defendants claim that they expended 47.1 hours in connection with their efforts to obtain plaintiffs' documents (Hanlon Decl. ¶ 10).  In response, plaintiffs challenge the reasonableness of the time that defendants' attorneys spent on three tasks:  (1) drafting a letter to the Court regarding

9

defendants' production of documents, (2) drafting a letter to the
Court after a failed settlement conference regarding plaintiffs'
production of documents, and (3) preparing for and appearing at
the January 30 discovery conference before the Court.

> i.   January 7 Letter to
>      the Court Concerning
>      <u>Defendants' Production</u>

First, plaintiffs claim that defendants should not be
entitled to recover for the hours spent by both Robert E. Hanlon,
Esq., and Sarah C. Hsia, Esq., in connection with their drafting
the "discovery letter," faxed to my chambers on January 7, 2005
(Statement of Services, Hanlon Decl. Ex. A).  I agree that
defendants should not be awarded fees for the hours expended on
the January 7 letter because the letter related to defendants',
not plaintiffs', document production and, therefore, was not the
product of any discovery misconduct by plaintiffs.  Defendants'
purpose in writing the letter was to explain why the Court should
sustain defendants' objections to 43 of plaintiffs' document
production requests (Letter from Robert E. Hanlon, Esq., dated
Jan. 7, 2005).  The letter made one reference to plaintiffs'
failure to produce documents in an introductory paragraph, but
made no further reference to plaintiffs' document production
(Letter from Robert E. Hanlon, Esq., dated Jan. 7, 2005).  This
single mention of plaintiffs' failure to produce documents in a

five-page letter otherwise devoted to plaintiffs' requests for
defendants' documents cannot reasonably be characterized as part
of an effort to obtain plaintiffs' documents.  Therefore, I
conclude that no fees should be awarded in connection with the
January 7 discovery letter.

> ii.  February 25 Letter
>      to the Court Concerning
>      Plaintiffs' Production

Plaintiffs next claim that defendants should not
recover fees for the time spent drafting a letter that Hanlon
described in his contemporary time entries as a letter "re: no
settlement" (Alston & Bird LLP, Detailed Statement of Services
("Statement of Services"), annexed as Ex. A to Hanlon Decl.).
They argue that this letter, which was faxed to my chambers on
February 25, 2005, was not connected to defendants' efforts to
obtain plaintiffs' documents and, therefore, was also not the
product of any discovery misconduct by plaintiffs (Pls.' Resp.
2).

Notwithstanding Hanlon's description of the February 25
letter in his time entries, that letter related to defendants'
efforts to obtain plaintiffs' documents.  The purpose of the
letter was to request that the Court "schedule a conference in
contemplation of [defendants'] motion to compel [p]laintiffs to
produce the materials called for in the overdue document re-

quests" (Letter from Robert E. Hanlon, Esq., dated Feb. 25, 2005, 2).  The letter recited facts suggesting that judicial intervention would be necessary to compel plaintiffs to produce documents as well as other forms of discovery.  The letter's content, viewed in light of its overall purpose, properly falls within the scope of defendants' fee application.  Since plaintiffs do not challenge the reasonableness of the specific amounts of time expended by defendants' counsel in connection with the February 25 letter, I shall address these time expenditures, along with defendants' other unchallenged time expenditures, in Part III.B.1.iv, below.

### iii.  Discovery Conference

Third, plaintiffs claim that Hsia's spending 18.1 hours to prepare for and appear at a hearing on January 30, 2006, was unreasonably duplicative of the 7.6 hours Hanlon spent preparing for and appearing at the same conference, and that both attorneys' fees claimed in connection with the hearing were unreasonable and excessive (Pls.' Resp. 2-3).

#### a.  Hsia's Appearance at the Hearing

"[T]he use of multiple attorneys . . . is not unreasonable per se . . . and parties are not barred from receiving compensation for work performed by an extra lawyer [sent] into

court to observe and assist." Etna Prods. Co. v. Q Mktg. Group,
Ltd., 03 Civ. 3805 (SAS)(FM), 2005 WL 2254465 at *4 (S.D.N.Y.
June 6, 2005) (Report & Recommendation), quoting Hutchinson v.
McCabee, 95 Civ. 5449 (JFK), 2001 WL 930842 at *3 (S.D.N.Y. Aug.
15, 2001); accord Kapoor v. Rosenthal, 269 F. Supp.2d 408, 414
(S.D.N.Y. 2003).  However, courts typically reduce the fee of an
attorney whose role is that of an observer and assistant.  See,
e.g., Quinn v. Nassau County Police Dep't, 75 F. Supp.2d 74, 78
(E.D.N.Y. 1999) (reducing junior attorney's hours by 20%, where
junior attorney was not yet admitted to bar and served primarily
as observer at trial); Rosasa v. Hudson River Club Rest., 96 Civ.
0993 (DLD), 1998 WL 106141 at *3 (S.D.N.Y. Mar. 9, 1998) (reduc-
ing partner's fee by approximately 45% to reflect his role as
associate's observer and assistant at trial); Carrero v. New York
City Hous. Auth., 685 F. Supp. 904, 908 (S.D.N.Y. 1988) (reducing
associate's fee by 33% where partner took deposition and associ-
ate observed and was ready to assist), aff'd in pertinent part,
rev'd and remanded on other grounds, 890 F.2d 569, 582 (2d Cir.
1989).

     Although Hsia spoke once at the hearing, her comments
were a de minimis part of the 69 page hearing transcript (Tran-
script of Hearing, dated Jan. 30, 2006 ("Tr."), 31).  In light of
this fact, it is clear that Hsia's role at the hearing was that
of Hanlon's observer and assistant.  Therefore, I find that it is

13

appropriate to reduce the billable hours claimed by Hsia for the hearing by 30%.  Since the hearing lasted approximately two hours, (see Tr. 1, 45, 69), Hsia's time chargeable to the hearing is reduced to 1.4 hours.

b.  Preparation
for the Hearing

Hanlon and Hsia spent 5.6 hours and 16.1 hours, respectively, preparing for the hearing,[3] and came to the hearing prepared to discuss the deficiencies in plaintiffs' production on a document-by-document, and request-by-request basis (Tr. 22-23, 26-27).  Their extensive preparation was evident from the way that they conducted themselves at the hearing.  Unfortunately, it is impossible for me to determine whether defendants' counsel used their time in a reasonable, non-duplicative manner in preparing for the hearing because their time entries do not explain what they did with sufficient specificity.

Of the six time entries relating to counsel's preparation for the hearing, only one gave detail beyond the bare recitation that they were preparing for the hearing.  That single more detailed entry consisted of the following:  "Preparing

---

[3]Although Hanlon and Hsia did not bill the time that they spent appearing the hearing separately from the time that they spent preparing for the hearing, the amount of time that they spent preparing for the hearing can be calculated by substracting the length of the hearing from the total time that each attorney expended on the hearing.

outline of evidence for contempt hearing before Judge Pitman"
(Statement of Services, Hanlon Decl. Ex. A).  Hsia billed 5.9
hours to defendants in connection with that time entry.  In
addition, neither attorney specified whether they included any
travel time in the time that they each billed to "prepar[ing] for
and attend[ing]" the hearing (Statement of Services, Hanlon Decl.
Ex. A).  Where time entries are justified in principle but vague
in detail, courts frequently employ a reduction of 20% in order
to eliminate waste that may be hidden in the entries.  See
Alexander v. Amchem Prods., Inc., 07 Civ. 6441 (RJS), 2008 WL
1700157 at *8 n.8 (S.D.N.Y. Apr. 3, 2008) (collecting cases).
Therefore, I reduce the time billed by Hanlon and Hsia to prepar-
ing for the hearing by 20%.

> iv.  Defendants'
>      Unchallenged
>      Time Expenditures

        Finally, defendants request compensation for the 14.2
hours spent on matters other than the January 7 discovery letter
and the settlement conference (Statement of Services, Hanlon
Decl. Ex. A).  These 14.2 hours consisted of the following billed
activities:

    (1) drafting and sending the post-settlement letter (3.4
    hours);

    (2) drafting a letter to the court concerning plaintiffs'
    failure to produce responsive documents (5.5 hours);

(3) drafting and sending a letter to plaintiffs' counsel regarding plaintiffs' document production (0.8 hours);

(4) drafting and sending a letter to plaintiffs' counsel confirming the narrowing of discovery requests in their meet and confer (2.0 hours); and

(5) reviewing "document requests and evidence of [the] existence of additional documents beyond those produced" (2.7 hours)

(Statement of Services, Hanlon Decl. Ex. A).  Plaintiffs' only objection to the reasonableness of these hours is their con- clusory statement that "the sums sought by [d]efendants . . . are unreasonable and excessive" (Pls.' Resp. 2).

First, with respect to the letters to the Court, described in items (1) and (2) above, these letters each con- sisted of two single spaced pages of tightly reasoned argument (see Letter from Robert E. Hanlon, Esq., dated Feb. 25, 2005; Letter from Robert E. Hanlon, Esq., dated June 22, 2005).  Based on my own experience and scrutiny of the letters, as well as a review of caselaw addressing analogous facts, e.g., Big R Food Warehouses v. Local 338 RWDSU, 896 F. Supp. 292, 298 (E.D.N.Y. 1995) (attorney's spending 6.25 hours preparing letter to court "consist[ing] of two and one-half pages of single spaced, well reasoned, and well researched argument" was reasonable), I find that the defendants' counsel's expenditure of time in preparing these letters to the Court was reasonable.

Second, with respect to the two letters to plaintiffs' counsel concerning document production and the narrowing of

16

discovery requests, described in items (3) and (4) above, the time that defendants' attorneys claim they spent preparing these letters -- 48 minutes and two hours, respectively -- is not unreasonable.  See Stein v. Foamex Int'l, Inc., 204 F.R.D. 270, 272 (E.D. Pa. 2001) (awarding attorney's fees pursuant to Rule 37; attorneys' spending 1.5 hours preparing two-paragraph letter requesting production of documents was reasonable).

     Third, with respect to the 2.7 hours Hsia spent "review[ing] . . . document requests and evidence of [the] existence of additional documents beyond those produced," as described in item (5) above, this expenditure of time is justi-fied in principle but vague in detail, and, therefore, should be subject to the same 20% reduction as the time spent preparing for the January 30 hearing.  In order to compel plaintiffs to produce additional documents, defendants attempted to make a showing at the January 30 hearing that there was evidence establishing that defendants had not turned over all responsive documents, contrary to their sworn statements (Tr. 26-64).  In order to make that showing, it was necessary for defendants to review the discovery provided.  Hsia's time entry states that she performed a review of the documents produced by plaintiffs on January 3, 2006 (Statement of Services, Hanlon Decl. Ex. A).  It appears that she was performing this task in preparation for the January 30

hearing.  Since defendants provide no detail as to how this time was spent, I also reduce this time entry by 20%.

     2.  <u>Hourly Rates</u>

     Two attorneys in Alston & Bird LLP's Intellectual Property Department represented defendants in this matter: Hanlon and Hsia (Hanlon Decl. ¶ 5).  Hanlon, a partner who was first admitted to practice law in 1991, customarily billed $550.00 per hour in 2005 and $585.00 per hour in 2006 (<u>see</u> Hanlon Decl. ¶ 8; Robert E. Hanlon Lawyer Profile, http://www.martindale.com/Robert-E-Hanlon/455661-lawyer.htm (last visited Feb. 6, 2009)).  Hsia, an associate who was admitted to practice law in 2004, customarily billed $310.00 per hour in 2005 and $350.00 per hour in 2006 (<u>see</u> Hanlon Decl. ¶ 8; Sarah Chih-Jen Hsia Lawyer Profile, http://www.martindale.com /Sarah-Chih-Jen-Hsia/3182847-lawyer.htm (last visited Feb. 6, 2009)).  Defendants have submitted contemporaneous time records, as required by <u>New York State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1147-48 (2d Cir. 1983), that set forth the dates on which services were performed, the hours spent and the nature of the services performed.  <u>See</u> <u>Wells Fargo Bank v. BrooksAmerica Mortgage Corp.</u>, 02 Civ. 4467 (HB), 2004 WL 2754855 at *1 (S.D.N.Y. Dec. 1, 2004), <u>citing</u> <u>Mikes v. Straus</u>, 274 F.3d 687, 706 (2d Cir. 2001).

Although defendants have offered satisfactory evidence that supports the rates at which they compensated Hanlon, they have not offered satisfactory evidence to support their payment of $310.00 per hour to Hsia in 2005, when she was presumably a second-year associate, and $350.00 per hour in 2006, when she presumably was a third-year associate.  In support of their fees, defendants' counsel submitted a copy of an article from the National Law Journal, dated December 6, 2004, which set forth published billing rates of law firms that, in defendants' counsel's estimation, are of "comparable size and reputation" to Alston & Bird LLP (Hanlon Decl. ¶ 9 & Ex. B).  These firms' published billing rates for partners often exceeded the rates charged by Hanlon.  Hanlon's rates fell approximately in the middle of the billing ranges of the partners at the majority of listed firms.  Yet none of the published rates neared $310.00 per hour for second-year associates and $350.00 per hour for third-year associates (see Hanlon Decl. Ex. B).  The highest published billing rates for any of the firms' second- and third-year associates was $280.00 per hour for second-year associates, and $330.00 per hour for third-year associates; only one firm charged its clients at those levels.

Since defendants do not otherwise explain why Hsia's billing rates are consistent with market rates prevailing in the Southern District for the relevant time period, and because

Hsia's fees of $310.00 and $350.00 seem unreasonably high in light of her limited experience, I find it appropriate to reduce her hourly rates by 15%, i.e., to $263.50 per hour in 2005, and $297.50 per hour in 2006, in accordance with the past practice of this Court.  See Envirosource, Inc. v. Horsehead Res. Devel. Co., 981 F. Supp. 876, 883 (S.D.N.Y. 1998); Fund Comm'n Svc., II, Inc. v. Westpac Banking Co., 93 Civ. 8298 (KTD)(RLE), 1996 WL 469660 at *7 (S.D.N.Y. Aug. 16, 1996); N.S.N. Int'l Indus., N.V. v. E.I. Du Pont De Nemours & Co., 89 Civ. 1692 (KTD)(AJP), 1996 WL 154182 at *3 (S.D.N.Y. Apr. 3, 1996).

However, Hanlon's hourly rates of $550.00 in 2005 and $585.00 in 2006, though high, are reasonable in light of his fifteen to sixteen years' experience and the fact that he prac-tices intellectual property law at a large Manhattan law firm. See, e.g., Entral Group Int'l, LLC v. Sun Sports Bar Inc., 05-CV-4836 (CBA), 2007 WL 2891419 at *10 (E.D.N.Y. Sept. 28, 2007) (approving Hanlon's hourly rate of $560.00 in copyright infringement case); Stevens v. Aeonian Press, Inc., 00 Civ. 6330 (JSM), 2002 WL 31387224 at *5 (S.D.N.Y. Oct. 23, 2002) (approving hourly rate of $460.00 for partners at large Manhattan firm in copyright infringement case) Yurman Designs, Inc. v. PAJ, Inc., 125 F. Supp.2d 54, 58 (S.D.N.Y. 2000) (approving partner rate of $520.69 per hour for attorneys handling copyright and trademark

infringement litigation).  I will therefore award Hanlon's fees to defendants at the rates that they requested.

C.  <u>Summary</u>

In light of the foregoing discussion, I calculate the amount of defendants' reasonable attorney's fees under the presumptively reasonable fee method as follows:

| Month/Year | Att'y | Adj. Hours | Adj. Rate | Total |
|---|---|---|---|---|
| <u>Letter to the Court Re: Defendants' Production</u> | | | | |
| 1/2005 | Hanlon | 0.00 | $550.00 | $ 0.00 |
| | Hsia | 0.00 | $263.50 | $ 0.00 |
| <u>Letters to Opposing Counsel</u> | | | | |
| 1/2005– | Hanlon | 0.50 | $550.00 | $ 275.00 |
| 5/2005 | Hsia | 2.30 | $263.50 | $ 606.05 |
| <u>Letters to the Court Re: Plaintiffs' Production</u> | | | | |
| 2/2005– | Hanlon | 5.60 | $550.00 | $ 3,080.00 |
| 6/2005 | Hsia | 3.30 | $263.50 | $ 869.55 |
| <u>Review of Evidence for Failure to Produce</u> | | | | |
| 1/2006 | Hsia | 2.16 | $297.50 | $ 642.60 |
| <u>Preparation for Hearing</u> | | | | |
| 1/2006 | Hanlon | 4.48 | $585.00 | $ 2,620.80 |
| | Hsia | 12.88 | $297.50 | $ 3,831.80 |
| <u>Appearance at Hearing</u> | | | | |
| 1/2006 | Hanlon | 2.00 | $585.00 | $ 1,170.00 |
| | Hsia | <u>1.40</u> | $297.50 | <u>$ 416.50</u> |
| | | 34.62 | | $13,512.30 |

21

Since neither party seeks any adjustment to the presumptively reasonable fee, I find that the amount of $13,512.30 constitutes defendants' attorney's fees.

### D.   Plaintiffs' Request for Sanctions

Finally, plaintiffs seek sanctions against defendants under Rule 37(b) due to defendants' failure to comply with the May 29 Order.  Due to the serious nature of an application for sanctions under Rule 37(b), which may include an order dispositive of the case, see Bambu Sales, Inc. v. Ozak Trading Inc., 53 F.3d 849, 853-54 (2d Cir. 1995), I conclude that this aspect of the current dispute should be addressed by formal motion, and plaintiffs' letter application for sanctions is, therefore, denied without prejudice to their renewing the application by formal motion.

### IV.   Conclusion

Accordingly, for all the foregoing reasons, defendants' motion for attorney's fees is granted to the extent that defendants are awarded $13,512.30 in reasonable attorney's fees, and plaintiffs' letter application for sanctions is denied without

prejudice to plaintiffs' renewal of their application by formal motion.

Dated:   New York, New York
         February 6, 2009

Respectfully submitted,

HENRY PITMAN
United States Magistrate Judge

Copies transmitted to:

Paul H. Schafhauser, Esq.
Herrick, Feinstein LLP
2 Park Avenue
New York, New York   10016

Robert E. Hanlon, Esq.
Alston & Bird LLP
90 Park Avenue
New York, New York   10016

23