```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------X
                               :
GUY MARGEL, et al.,            :
                               :
            Plaintiffs,        :    04 Civ. 1514 (PAC)(HBP)
                               :
    -against-                  :    OPINION
                               :    AND ORDER
E.G.L. GEM LAB LTD., et al.,   :
                               :
            Defendants.        :
                               :
-------------------------------X
```

PITMAN, United States Magistrate Judge:


I.  Introduction


By notice of motion dated June 4, 2009, (Docket Item 109), plaintiffs move for leave to file a second amended complaint.  The proposed amended complaint would add Jacob Tversky as a defendant.  It would also include claims for fraud and unjust enrichment against Tversky and defendants Nachum Krasnianki and EGL Gem Lab Ltd. and claims for breach of contract and breach of the covenant of good faith and fair dealing against EGL Gem Lab Ltd.  For the reasons set forth below, plaintiffs' motion is granted in part and denied in part.


II.  Facts


This is an action among gem grading laboratories and their principals concerning, in essence, the right to use

certain trademarks in the United States and the right to issue
diamond grading certificates that bear those marks.

In 1974, plaintiff Guy Margel opened an international
gem grading business (Proposed Second Amended Complaint, dated
June 4, 2009, attached as Exhibit E to the Declaration of Paul H.
Schafhauser (Docket Item 110), ("Am. Compl."), ¶¶ 13, 17).  The
business eventually grew to include gem grading facilities in
Belgium, South Africa, France, Turkey, England, Israel, India,
South Korea and the United States (Am. Compl. ¶¶ 13, 18).  In
1980, Margel registered the trademarks "European Gemological
Laboratory" and "E.G.L." (collectively, the "EGL Marks") in the
United States for use in connection with his gem grading business
(Am. Compl. ¶ 18).

In January 1986, Margel sold the assets and the busi-
ness of his lab in the United States, European Gemological
Laboratory, Inc., to N.K. Gemological Services, Inc., which then
changed its name to E.G.L. Gem Lab Ltd. ("EGL-USA") (Am. Compl. ¶
21).  Defendant Krasnianski owned N.K. Gemological Services, Inc.
and is an officer, director, and majority shareholder of EGL-USA
(Am. Compl. ¶¶ 6, 21).  As part of the transaction, EGL-USA
acquired the right to use Margel's United States trademarks
throughout the United States, but granted Margel a license to use
the trademarks in the Los Angeles area (Am. Compl. ¶ 22; Declara-
tion of Mark Gershburg, attached as Exhibit A to the Declaration

of Paul H. Schafhauser (Docket Item 110), ("Gershburg Decl. I"),
Ex. B ¶ 2).  A related agreement ("Certificate Fee Agreement")
also executed in January 1986 provided, inter alia, that Margel
would provide EGL-USA with grading certificates on demand and
that EGL-USA would pay Margel "$1.25 for each and every diamond
certificate issued by [EGL-USA] to its customers" (Am. Compl. ¶
27; Gershburg Decl. I Ex C).

     A dispute among the parties arose in 1997 that was
resolved in November 1998 through the execution of a settlement
agreement and consent award as well as an agreement in principle
("Settlement Agreements") (Am. Compl. ¶¶ 65-67).  The material
terms of the settlement agreement and consent award provided,
inter alia, that EGL-USA would pay certain certificate fees to
Margel and would continue to pay Margel $1.25 for "each and every
diamond certificate issued in the United States" (Am. Compl. ¶¶
68-69).  These terms were also memorialized in the agreement in
principle, which further provided that the diamond certificates
subject to the per-certificate payment included "full" certifi-
cates, "mini" certificates and "certificates after recut" (Am.
Compl. ¶ 70; Gershburg Decl. I, Ex. F).

     Plaintiffs allege that despite the fact that their uses
of EGL Marks are entirely lawful, defendants have engaged in a
publicity campaign that mischaracterizes plaintiffs' activities
as illegal and has resulted in the tarnishing of plaintiffs'

3

professional image (Am. Compl. ¶¶ 35-60).  Plaintiffs also allege that since 2004, defendants have failed to pay $1.25 for each grading certificate EGL-USA issued (Am. Compl. ¶ 82).  In their counterclaims, defendants allege that plaintiffs are using the EGL trademarks in the United States illegally, thereby commit-ting, <u>inter</u> <u>alia</u>, trademark infringement, dilution, and false advertising (Am. Compl. ¶¶ 70-151).

In their proposed amended complaint, plaintiffs allege that either Krasnianski, or Tversky[1], or both falsified monthly reports to Margel detailing the number of grading certificates issued by EGL-USA (Am. Compl. ¶¶ 72, 74-76).  Specifically, plaintiffs allege that Krasnianski "and/or" Tversky, gave grading certificates names such as Gem ID Card, Mini Report, Micro Report, Mini Appraisal, and Diamond Analysis Report (Am. Compl. ¶ 75).  Because these types of grading certificates were not named "diamond certificates," EGL-USA did not include them in monthly reports sent to Margel, and Margel was not paid for the issuance of these documents as required under the Certificate Fee Agree-ment and the Settlement Agreements (Am. Compl. ¶¶ 76, 79-80).

Plaintiffs further allege that Tversky, Krasnianski, and EGL-USA caused entities to issue grading certificates in names other than EGL-USA (Am. Compl. ¶ 81).  These entities

---

[1] Plaintiffs allege that Tversky is "an employee and/or officer of E.G.L. L.A., Inc. and/or [EGL-USA]."

4

included EGL-LA, Inc., Gemology Headquarters International, Gemological Research, Inc., GHI India Pvt. Ltd., EGL Gem Lab, Ltd. (Canada), Jay Enterprises, Inc., J.T. Enterprises, Inc., A.M.D.B., Inc., and Universal Gemological Services, Inc. (Am. Compl. ¶ 81).  When certificates were issued in the names of these other entities Margel was not paid for the issuance of these documents under the Certificate Fee Agreement and the Settlement Agreements (Am. Compl. ¶ 81).

According to plaintiffs, these new facts were brought to their attention as the result of two declarations executed by Mark Gershburg, the former Director and CEO of EGL-USA, in November 2008 (Memorandum of Law in Support of Plaintiffs' Motion for Leave to File a Second Amended Complaint Pursuant to Fed.R.Civ.P. 15, dated June 4, 2009 (Docket Item 111), ("Pl's Mem."), at 4).  Based on these new facts, plaintiffs seek to amend their complaint to include Tversky as a defendant, add claims for fraud and unjust enrichment against Tversky, Krasnianki and EGL-USA, and add claims for breach of contract and breach of the covenant of good faith and fair dealing against EGL-USA.  Defendants oppose amendment on the grounds that the proposed amendments are futile, untimely and will result in undue prejudice.

III.  Analysis

    A. Standards Applicable
       to a Motion to Amend

       The standards applicable to a motion to amend a plead-
ing are well settled and require only brief review.  Leave to
amend a pleading should be freely granted when justice so re-
quires.  Fed.R.Civ.P. 15(a); Foman v. Davis, 371 U.S. 178, 182
(1962); McCarthy v. Dunn & Bradstreet Corp., 482 F.3d 184, 200
(2d Cir. 2007); Aetna Cas. & Sur. Co. v. Aniero Concrete Co.,
404 F.3d 566, 603-04 (2d Cir. 2005); Dluhos v. Floating & Abandoned
Vessel, Known as "New York", 162 F.3d 63, 69 (2d Cir. 1998);
Gumer v. Shearson, Hamill & Co., 516 F.2d 283, 287 (2d Cir.
1974); Aniero Concrete Co. v. New York City Constr. Auth., 94
Civ. 9111 (CSH), 1998 WL 148324 at *7 (S.D.N.Y. Mar. 30, 1998)
(Haight, D.J.), aff'd sub nom., Aetna Cas. & Sur. Co. v. Aniero
Concrete Co., 404 F.3d 566 (2d Cir. 2005).  "Nonetheless, the
Court may deny leave if the amendment (1) has been delayed
unduly, (2) is sought for dilatory purposes or is made in bad
faith, (3) the opposing party would be prejudiced, or (4) would
be futile."  Lee v. Regal Cruises, Ltd., 916 F. Supp. 300, 303
(S.D.N.Y. 1996) (Kaplan, D.J.), aff'd, 116 F.3d 465 (2d Cir.
1997); see McCarthy v. Dunn & Bradstreet Corp., supra, 482 F.3d
at 200; Ellis v. Chao, 336 F.3d 114, 126-27 (2d Cir. 2003);
Montefiore Med. Ctr. v. Am. Prot. Ins. Co., 00 Civ. 3235 (LTS),

6

2003 WL 21108261 at *1 (S.D.N.Y. May 14, 2003) (Swain, D.J.); Am. Home Assurance Co. v. Jacky Maeder (Hong Kong) Ltd., 969 F. Supp. 184, 187-88 (S.D.N.Y. 1997) (Kaplan, D.J.).

The Court of Appeals has also repeatedly noted that the trial court has "broad" discretion in ruling on a motion to amend.  Local 802, Assoc. Musicians v. Parker Meridien Hotel, 145 F.3d 85, 89 (2d Cir. 1998); Krumme v. Westpoint Stevens Inc., 143 F.3d 71, 88 (2d Cir. 1998); see generally Grace v. Rosenstock, 228 F.3d 40, 53-54 (2d Cir. 2000).

To the extent a proposed amendment would add new parties, the motion is technically governed by Rule 21 rather than Rule 15(a).  FTD Corp. v. Banker's Trust Co., 954 F. Supp. 106, 109 (S.D.N.Y. 1997) (Stein, D.J.).  Rule 21 provides that "the court may at any time, on just terms, add or drop a party,". Fed.R.Civ.P. 21.  However, "'the same standard of liberality' applies under either Rule."  FTD Corp. v. Banker's Trust Co., supra, 954 F. Supp. at 109, quoting Fair Hous. Dev. Fund Corp. v. Burke, 55 F.R.D. 414, 419 (E.D.N.Y. 1972) and Expoconsul Int'l, Inc. v. A/E Sys., Inc., 145 F.R.D. 336, 337 n.4 (S.D.N.Y. 1993) (Preska, D.J.); see also Sly Magazine, LLC v. Weider Publ'ns L.L.C., 241 F.R.D. 527, 532 (S.D.N.Y. 2007) (Casey, D.J.); Chowdhury v. Haveli Rest., Inc., 04 Civ. 8627 (RMB)(JCF), 2005 WL 1037416 *1-*2 (S.D.N.Y. May 3, 2005) (Francis, M.J.).

B. The Parties'
   Contentions

As noted above, plaintiff seeks to amend the complaint to (1) add Tversky as a defendant, (2) include claims for fraud and unjust enrichment against Tversky, Krasnianski and EGL USA, and (3) include claims for breach of contract and breach of the covenant of good faith and fair dealing against EGL USA.  Defendants oppose all of the proposed amendments on the grounds that they are futile, and that plaintiffs' assertion of the new claims is untimely and will result in prejudice.  I shall first address whether each of the proposed amendments is futile and then address defendants' claims of delay and prejudice.

1. Futility

A proposed amended pleading is futile when it fails to state a claim.  Health-Chem Corp. v. Baker, 915 F.2d 805, 810 (2d Cir. 1990); Mina Inv. Holdings Ltd. v. Lefkowitz, 184 F.R.D. 245, 257 (S.D.N.Y. 1999) (Sweet, D.J.); Parker v. Sony Pictures Entm't, Inc., 19 F. Supp. 2d 141, 156 (S.D.N.Y. 1998) (Kaplan, D.J.), aff'd in pertinent part, vacated in part on other grounds sub nom., Parker v. Columbia Pictures Indus., 204 F.3d 326 (2d Cir. 2000); Yaba v. Cadwalader, Wickersham & Taft, 931 F. Supp. 271, 274 (S.D.N.Y. 1996) (Koeltl, D.J.); Prudential Ins. Co. v. BMC Indus., Inc., 655 F. Supp. 710, 711 (S.D.N.Y. 1987) (Sweet,

D.J.); see generally Dluhos v. Floating & Abandoned Vessel known
as "New York", supra, 162 F.3d at 69-70.  The party opposing the
amendment has the burden of demonstrating that leave to amend
would be futile.  Staskowski v. County of Nassau, 05 Civ. 5984
(SJF)(WDW), 2007 WL 4198341 at *4 (E.D.N.Y. Nov. 21, 2007) ("It
is axiomatic that the party opposing an amendment has the burden
of establishing that leave to amend would be futile."); Lugosch
v. Congel, 00-CV-784, 2002 WL 1001003 at *1 (N.D.N.Y. May 14,
2002); citing Blaskiewicz v. County of Suffolk, 29 F. Supp. 2d
134, 137-38 (E.D.N.Y. 1998).

Leave to amend may be denied as futile "where the claim
or defense to be added has no 'colorable merit.'"  Ochei v. All
Care/Onward Healthcare, 07 Civ. 0968 (PKC), 07 Civ. 0969 (PKC),
2009 WL 890061 at *14 (S.D.N.Y. Mar. 31, 2009) (Castel, D.J.),
citing Posadas de Mexico, S.A. de C.V. v. Dukes, 757 F. Supp.
297, 302 (S.D.N.Y. 1991) (Conner, D.J.); see also Ryder Energy
Distrib. Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774,
783 (2d Cir. 1984) (if the movant has "colorable grounds for
relief," justice requires that leave to amend be granted).  The
"colorable grounds requirement mandates that a district court may
not deny a motion for leave to amend a pleading when said plead-
ing is sufficient to withstand a motion to dismiss under Federal
Rule of Civil Procedure 12(b)(6)."  Children First Found. Inc. v.
Martinez, 04 Civ. 0927 (NPM), 2007 WL 4618524 at *5 (N.D.N.Y.

Dec. 27, 2007), citing Kassner v. 2nd Ave. Delicatessen, Inc.,
496 F.3d 229, 244 (2d Cir. 2007); Estate of Ratcliffe v. Pradera
Realty Co., 05 Civ. 10272 (JFK), 2007 WL 3084977 at *4 (S.D.N.Y.
Oct. 19, 2007) (Keenan, D.J.); Journal Publ'g Co. v. Am. Home
Assurance Co., 771 F. Supp. 632, 635 (S.D.N.Y. 1991) (Leisure,
D.J.); Prudential Ins. Co. v. BMC Indus., Inc., supra, 655 F.
Supp. at 711 (Although leave to amend should be freely given, "it
is inappropriate to grant leave when the amendment would not
survive a motion to dismiss.").

        An amendment to a pleading may therefore be denied as
futile if a defendant can show that there is no "set of facts
consistent with the allegations in the complaint" which would
entitle plaintiff to relief.  Bell Atlantic Corp. v. Twombly, 550
U.S. 544, 563 (2007).  A claim that a proposed amendment is
futile must be rejected if the plaintiff's "factual allegations
[are] enough to raise a right to relief above the speculative
level on the assumption that all of the complaint's allegations
are true."  Bell Atlantic Corp. v. Twombly, supra, 550 U.S. at
555 (overruling the standard set forth in Conley v. Gibson, 355
U.S. 41, 45-46 (1957) that a motion to dismiss should not be
granted "unless it appears beyond doubt that the plaintiff can
prove no set of facts in support of his claim which would entitle
him to relief"); see also Oliver Schools, Inc. v. Foley, 930 F.2d
248, 252 (2d Cir. 1991) (discussing the standard for denying an

                              10

amendment as futile prior to <u>Twombly</u>); <u>Blaskiewicz v. County of
Suffolk</u>, <u>supra</u>, 29 F. Supp. 2d at 138 (same).

       a. <u>Fraud</u>

Plaintiffs claim that Tversky, Krasnianski and EGL-USA
committed fraud by intentionally omitting grading certificates
from the monthly reports sent to Margel. Specifically, plain-
tiffs claim that these defendants sought to avoid their obliga-
tions under the Certificate Fee Agreement and the Settlement
Agreements by giving the grading certificates names other than
"certificate" and by causing entities other than EGL-USA to issue
the grading certificates, so that such grading certificates would
be omitted from monthly reports of "certificates" issued (Am.
Compl. ¶¶ 184, 186, 199, 201).

Plaintiffs' proposed fraud claims are governed by New
York Law. The parties have previously stipulated that New York
law governs the interpretation of both the Certificate Fee
Agreement and the Settlement Agreements (Opinion and Order dated
May 24, 2007 (Docket Item 91) at 5 n.2), and do not urge applica-
tion of a different jurisdiction's law with respect to the fraud
claims. Furthermore, New York has the greatest interest in
having its law applied to this claim. <u>White Plains Coat & Apron
Co., Inc. v. Cintas Corp.</u>, 460 F.3d 281, 284 (2d Cir. 2006),
<u>citing</u> <u>Lazard Freres & Co. v. Protective Life Ins. Co.</u>, 108 F.3d

1531, 1539 n.5 (2d Cir. 1997) (under New York law, "the relevant analytical approach to choice of law in tort actions' is the 'interest analysis' . . . the law of the jurisdiction having the greatest interest in the litigation will be applied.").  The allegedly fraudulent monthly reports were purportedly issued by an officer, director and major shareholder of a New York corporation and the director of its affiliate in the name of a New York corporation located in New York, the business relationship between the parties was defined by contracts governed by New York law, and the most recent of these contracts was signed in New York (Am. Compl. ¶¶ 5, 6, 9; Declaration of Yaakov (Jacob) Tversky, dated June 30, 2009 (Docket Item 120), ("Tversky Decl."), ¶ 1; Gershburg Decl. I Ex. E, F, G).  The only other state where any relevant activity occurred is California, where Tversky resides and where certain payments under the relevant agreements apparently originated (Am. Compl. ¶ 9; Gershburg Decl. I Ex. G).  Furthermore, although Margel is a citizen of Belgium and monthly reports and payments under the relevant agreements were sent to him in Belgium (Am. Compl. ¶ 1; Gershburg Decl. I Ex. G), these factors do not outweigh New York's significant contacts with this action and its interest in regulating the conduct of New York corporations doing business in New York.  See Thomas H. Lee Equity Fund V, L.P. v. Mayer Brown, Rowe & Maw LLP, 612 F. Supp. 2d 267, 284 (S.D.N.Y. 2009) (Lynch, D.J.) (although

12

plaintiff "received and relied upon" misrepresentations in
Massachusetts, New York law applied where alleged fraud origi-
nated in New York, "substantial activities in furtherance of the
fraud" occurred in New York, and relevant agreement was signed in
New York and governed by New York law); LaSala v. UBS, AG, 510 F.
Supp. 2d 213, 232-33 (S.D.N.Y. 2007) (Haight, D.J.) (although
injury occurred in the United States, Swiss law applied to tort
claim where Switzerland had most significant contacts with the
action and Switzerland had a paramount interest in regulating
defendant bank).

Under New York law, a claim for fraud requires proof
that: "(1) the defendant made a material false representation,
(2) the defendant intended to defraud the plaintiff thereby, (3)
the plaintiff reasonably relied upon the representation, and (4)
the plaintiff suffered damage as a result of such reliance."
Wall v. CSX Transp., Inc., 471 F.3d 410, 415-16 (2d Cir. 2006),
citing Bridgestone/Firestone, Inc. v. Recovery Credit Servs.,
Inc., 98 F.3d 13, 19 (2d Cir. 1996).

"[U]nder New York law, parallel fraud and contract
claims may be brought only if the plaintiff (1) demonstrates a
legal duty separate from the duty to perform under the contract;
(2) points to a fraudulent misrepresentation that is collateral
or extraneous to the contract; or (3) seeks special damages that
are unrecoverable as contract damages."  Merrill Lynch & Co. Inc.

13

v. Allegheny Energy, Inc., 500 F.3d 171, 183 (2d Cir. 2007),
citing Bridgestone/Firestone, Inc. v. Recovery Credit Servs.,
Inc., supra, 98 F.3d at 20; GEM Advisors, Inc. v. Corporacion
Sidenor, S.A., 06 Civ. 5693 (RJS), 2009 WL 3459187 at *17
(S.D.N.Y. Oct. 27, 2009) (Sullivan, D.J.); Great Earth Int'l
Franchising Corp. v. Milks Dev., 311 F. Supp. 2d 419, 425
(S.D.N.Y. 2004) (Hellerstein, D.J.).

Here, plaintiffs' fraud claims arise out of the same
facts as their breach of contract claim.  Specifically, the
proposed amended complaint alleges that defendants committed both
breach of contract and fraud by allegedly under-reporting the
number of grading certificates issued by EGL-USA (Am. Compl. ¶¶
171, 184, 186, 199, 201).  Plaintiffs have not alleged that
Tversky, Krasnianski, or EGL-USA owed any duty to report the
number of certificates issued apart from the duty under the
contract and have not alleged any distinct damages as a result of
the alleged fraud.

Furthermore, the alleged misrepresentations were not
collateral or extraneous to the contract.  Under New York Law,
"intentionally false statements offered to conceal a breach of
contract do not give rise to an action for fraud."  Bear, Stearns
Funding, Inc. v. Interface Group-Nevada, Inc., 361 F. Supp. 2d
283, 311 (S.D.N.Y. 2005) (Haight, D.J.); see John Paul Mitchell
Sys. v. Quality King Distrib., Inc., 99 Civ. 9905, 2001 WL

14

910405, at *5 (S.D.N.Y. Aug. 13, 2001) (Stein, D.J.) (written and oral statements denying that products were distributed in violation of agreement did not give rise to fraud claim); IKEA N. Am. Servs., Inc. v. Northeast Graphics, Inc., 56 F. Supp. 2d 340, 342 (S.D.N.Y. 1999) (Rakoff, D.J.) (forged post office documents showing that brochures had been mailed pursuant to contract did not give rise to separate claim for fraud); Reuben H. Donnelley Corp. v. Mark I Mktg. Corp., 893 F. Supp. 285, 290 (S.D.N.Y. 1995) (Conner, D.J.) (intentionally concealing use and marketing of patented process to avoid obligation to pay royalties under licensing agreement did not constitute fraud). Here, plaintiffs allege that by falsely reporting the number of grading certificates issued, defendants were able to avoid their obligation to make payments to Margel pursuant to the Certificate Fee Agreement and Settlement Agreements (Am. Compl. ¶ 78, 80). These alleged misrepresentations were central to the contract and were, at most, an attempt to conceal alleged breaches of the parties' contract.

Thus, because the purpose of the alleged misrepresentation was to conceal a breach of contract, the proposed amended complaint fails to state a claim for fraud and is futile to the extent it attempts to do so.

b. <u>Unjust Enrichment</u>

Plaintiffs' next proposed claim asserts that
Krasnianski, Tversky and EGL-USA were unjustly enriched at the
expense of Margel (Am. Compl. ¶¶ 193-97, 207-211).  Although the
proposed amended complaint does not identify the specific facts
that form the basis for their unjust enrichment claim,
plaintiffs' moving papers state that this claim stems from the
alleged scheme to submit false monthly reports to Margel (<u>see</u>
Pl's Mem. at 1, 3-5, 7 (stating that all of the proposed claims
are based on the facts outlined in the declarations of Mark
Gershburg)).

New York law also applies to plaintiffs' proposed
unjust enrichment claims because New York is the "center of
gravity" of this dispute.  <u>See</u> <u>In re Grand Theft Auto Video Game</u>
<u>Consumer Litig.</u>, 251 F.R.D. 139, 148-49 (S.D.N.Y. 2008) (Kram,
D.J.); <u>M'Baye v. N.J. Sports Prod., Inc.</u>, 06 Civ. 3439 (DC), 2007
WL 431881 at *10 (S.D.N.Y. Feb. 7, 2007) (Chin, D.J.).  In
determining the "center of gravity," "courts may consider a
variety of significant contacts, including the place of
contracting, the places of negotiation and performance, the
location of the subject matter, and the domicile or place of
business of the contracting parties."  <u>Tri-State Employment</u>
<u>Servs., Inc. v. Mountbatten Sur. Co.</u>, 295 F.3d 256, 260-261 (2d
Cir. 2002) (internal citations omitted).  In this case, the

Settlement Agreements were signed in New York, the monthly
statements were sent in the name of a New York corporation
located in New York, and all but one of the defendants are either
located or have their principal place of business in New York
(Am. Compl. ¶¶ 5-9; Gershburg Decl. I Exhs. E, F. G).  Although
monthly reports and amounts due under the contract were submitted
to Margel in Belgium and certain checks for amounts due under the
relevant agreements were sent from Los Angeles (Gershburg Decl. I
Ex. G), these contacts do not outweigh those of New York.  See
Restatement (Second) of Conflicts § 188 cmt. e ("the place of
performance can bear little weight in the choice of the applica-
ble law when . . . performance by a party is to be divided more
or less equally among two or more states[.]").  Furthermore,
neither party seeks application of Belgian or California law to
plaintiffs' proposed claims.

        The elements of a claim for unjust enrichment under New
York law are "(1) that the defendant benefitted, (2) at the
plaintiff's expense, and (3) that equity and good conscience
require restitution."  Leibowitz v. Cornell Univ., 584 F.3d 487,
509 (2d Cir. 2009), citing In re Mid-Island Hosp., Inc., 276 F.3d
123, 129 (2d Cir. 2002); Beth Israel Med. Ctr. v. Horizon Blue
Cross & Blue Shield of N.J., Inc., 448 F.3d 573, 586 (2d Cir.
2006).

Because unjust enrichment is a quasi-contractual remedy, a claim for unjust enrichment will not lie "where there is a valid and enforceable written contract governing the subject matter of the dispute." Kottler v. Deutsche Bank AG, 607 F. Supp. 2d 447, 467 (S.D.N.Y. 2009) (Crotty, D.J.), citing Valley Juice Ltd. v. Evian Waters of France, Inc., 87 F.3d 604, 610 (2d Cir. 1996); see Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc., supra, 448 F.3d at 586-87; Nat'l Util. Serv., Inc. v. Tiffany & Co., No. 07 Civ. 3345 (RJS), 2009 WL 755292 at *9 (S.D.N.Y. Mar. 20, 2009) (Sullivan, D.J.). Here, the plaintiffs specifically allege the existence of a valid contract governing the subject matter of their unjust enrichment claims (Am. Compl. ¶¶ 169-70). Thus, the proposed amended complaint does not state a claim for unjust enrichment and is futile to the extent it attempts to do so.

c. Breach of Covenant of
   Good Faith and Fair Dealing

The proposed amended complaint includes a claim for breach of the covenant of good faith and fair dealing against EGL-USA (Am. Compl. ¶¶ 193-97). The proposed claim for breach of the covenant of good faith and fair dealing is also based on the alleged scheme to submit false monthly reports to Margel (see Pl's Mem. at 1, 3-5, 7 (stating that all of the proposed claims

18

are based on the facts outlined in the declarations of Mark
Gershburg)).

New York law applies to plaintiffs' proposed claim for
breach of the covenant of good faith and fair dealing.  The
parties have previously stipulated that New York law governs the
Certificate Fee Agreement and the Settlement Agreement and, as
discussed <u>supra</u>, New York has the most significant contacts with
this dispute.  <u>See</u> <u>Harris v. Provident Life & Accident Ins. Co.</u>,
310 F.3d 73, 80 (2d Cir. 2002) (breach of the duty of good faith
"is merely a breach of the underlying contract"); <u>Tri-State</u>
<u>Employment Servs., Inc. v. Mountbatten Sur. Co.</u>, <u>supra</u>, 295 F.3d
at 260-261 ("[c]ourts in New York . . . apply a 'center of
gravity' or 'grouping of the contacts' approach to choice-of-law
issues in contract cases").

"Under New York law, a covenant of good faith and fair
dealing is implicit in all contracts during the course of con-
tract performance."  <u>Tractebel Energy Mktg., Inc. v. AEP Power</u>
<u>Mktg., Inc.</u>, 487 F.3d 89, 98 (2d Cir. 2007); <u>see</u> <u>M/A-COM Sec.</u>
<u>Corp. v. Galesi</u>, 904 F.2d 134, 136 (2d Cir. 1990).  This covenant
prohibits parties to a contract from doing "anything which will
have the effect of destroying or injuring the right of the other
party to receive the fruits of the contract."  <u>Tractebel Energy</u>
<u>Mktg., Inc. v. AEP Power Mktg., Inc.</u>, <u>supra</u>, 487 F.3d at 98,
<u>citing</u> <u>Dalton v. Educ. Testing Serv.</u>, 87 N.Y.2d 384, 389, 663

N.E.2d 289, 291, 639 N.Y.S.2d 977, 979 (1995); see Thyroff v.
Nationwide Mut. Ins. Co., 460 F.3d 400, 407 (2d Cir. 2006).

New York law, however, "requires dismissal of an
implied covenant claim where the claim derives from the same set
of facts as a breach of contract claim." FCOF UB Sec. LLC v.
MorEquity, Inc., 09 Civ. 0551 (VM), 2009 WL 3241538 at *7
(S.D.N.Y. Sept. 29, 2009) (Marrero, D.J.); see Simon v. Unum
Group, 07 Civ. 11426 (SAS), 2008 WL 2477471 at *2 (S.D.N.Y. June
19, 2008) (Scheindlin, D.J.) ("If the allegations underlying the
breach of the implied covenant of good faith claim and the breach
of contract claim are the same, then the good faith claim is
'redundant' and cannot survive a motion to dismiss"); Sea Carri-
ers Corp. v. Empire Programs, Inc., 488 F. Supp. 2d 375, 380
(S.D.N.Y. 2007) (Sweet, D.J.) (same).  Similarly, "where the
relief sought by the plaintiff in claiming a breach of the
implied covenant of good faith is 'intrinsically tied to the
damages allegedly resulting from the breach of contract,' there
is no separate and distinct wrong that would give rise to an
independent claim." Kermanshah v. Kermanshah, 580 F. Supp. 2d
247, 272-73 (S.D.N.Y. 2008) (Peck, M.J.), quoting ARI & Co., Inc.
v. Regent Int'l Corp., 273 F. Supp. 2d 518, 522 (S.D.N.Y. 2003)
(Marrero, D.J.).

Plaintiffs' claim for breach of the covenant of good
faith and fair dealing stems from the same set of facts as their

20

breach of contract claim.  In their proposed amended complaint,
plaintiffs base their breach of contract claim, in part, on the
allegedly false monthly reports to Margel (Am. Compl. ¶ 171).
Plaintiffs' claim for breach of the covenant of good faith and
fair dealing is based on the same allegedly false reports (Pl's
Mem. at 1, 3-5, 7).  In addition, there are no damages alleged in
connection with the claim alleging a breach of the covenant of
good faith and fair dealing that are distinct from the damages
suffered as a result of the alleged breach of contract.  Thus,
because plaintiffs' claim for breach of the covenant of good
faith and fair dealing is duplicative of their breach of contract
claim, the proposed amended complaint does not state a claim for
breach of the covenant of good faith and fair dealing and is
futile to the extent it attempts to do so.

### d. Breach of Contract

          Plaintiffs also seek to amend the complaint to include
a new theory of breach of contract.  Specifically, plaintiffs
wish to include allegations that defendants breached the contract
by failing to submit accurate monthly reports to Margel.  As
noted above, plaintiffs allege that the monthly reports were
false in two respects.  First, plaintiffs claim that the monthly
reports failed to include certain documents issued by defendants
such as Gem ID Cards, Micro Reports, Mini Appraisals, Diamond

Analysis reports and Diamond Reports as certificates subject to the $1.25 per certificate fee.  Second, plaintiffs claim that defendants issued certificates through entities other than EGL-USA to avoid the per certificate fee.  Defendants again attack the proposed amendment as futile.

"To make out a viable claim for breach of contract a 'complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages.'"  Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of N.Y., 375 F.3d 168, 177 (2d Cir. 2004), quoting Harsco Corp. v. Segui, 91 F.3d 337, 348 (2d Cir. 1996); Fuji Photo Film U.S.A., Inc. v. McNulty, 05 Civ. 7869 (SAS), 2009 WL 3754359 at *3 (S.D.N.Y. Nov. 04, 2009) (Scheindlin, D.J.).

Plaintiffs' proposed amendments to their breach of contract claim state a claim.  Plaintiffs allege the existence of a valid and enforceable contract by which defendants were re-quired to pay Margel $1.25 for each diamond certificate issued by EGL-USA (Am. Compl. ¶¶ 169-70).  They also allege that Margel performed under the contract (Am. Compl. ¶ 167).  The proposed amended complaint further alleges that EGL-USA breached the contract by falsely reporting the number of certificates subject to the $1.25 per certificate fee and "thereby artificially reducing the amount reported to Margel as due and owing to him

under the Certificate Fee Agreements" (Am. Compl. ¶ 171-72).  If these allegations are true, and EGL-USA was, in fact, issuing diamond certificates covered by the parties' agreement without paying $1.25 to Margel, this would constitute a breach of its contractual duties.  Finally, the proposed amended complaint alleges that Margel was damaged as a result of Margel's failure to pay these amounts due under the contract (Am. Compl. ¶ 171-72).  Therefore, amendment of the complaint to include this new theory of breach of contract is not futile.

         2. Undue Delay
            and Prejudice

        Defendants also oppose the motion to amend on the grounds of undue delay and prejudice.

        Defendants claim that the proposed amendments were unduly delayed because plaintiffs have known about defendants' issuance of diamond appraisal documents not formally denominated as "certificates" since 1998 (Defendants' Response to Plaintiffs' Motion for Leave to File an Amended Complaint, dated July 1, 2009 (Docket Item 115), ("Defs' Mem."), at 11-12).  In support of this contention, they offer a draft settlement agreement which pro-vided for royalty payments to Margel for "any paper referred to as a 'certificate' or 'certification'" including "without limita-tion, 'full' certificates, 'mini' certificates, copied and/or reissued certificates, updated certificates and certifications

after recut" (Declaration of Robert E. Hanlon, dated July 1, 2009
(Docket Item 116), ("Hanlon Decl."), Ex. C).  The draft agreement
does not show prior knowledge of the documents alleged to have
been wrongfully excluded from the monthly reports because none of
these documents is referred to as a "certificate" (<u>see</u> Am. Compl.
¶ 75 ("instead of calling all of [EGL-USA]'s certifications
<u>certificates</u>, Krasnianski and/or Tversky caused [EGL-USA] to give
many of them different names, such as <u>Gem ID Card, Mini Report,
Micro Report, Mini Appraisal, and Diamond Analysis Report</u>")).

        Defendants also claim that plaintiffs had prior notice
of the documents at issue based on a photo of Margel at a 2002
diamond trade show where he is allegedly standing beside Gem ID
Cards, Ideal Cut Reports and Micro Reports (Defs' Mem. at 13;
Tversky Decl. ¶ 8; Hanlon Decl. Ex. E) and a conversation that
allegedly took place between Margel and Tversky wherein Margel
commented positively on documents such as Gem Passports, Gem ID
cards and Micro Reports and asked if he could receive payment for
such reports (Defs' Mem. at 13; Tversky Decl. ¶ 10).  Further-
more, defendants claim that documents produced to plaintiffs by
EGL-USA in 2006 show reports beyond "full" certificate, "mini"
certificate and certificates after recut, demonstrating that
plaintiffs were aware of the existence of such documents (Defs'
Mem. at 13).

Drawing all inferences in plaintiffs' favor, I cannot find undue delay based upon this evidence.  The names of the items on the table in the 2002 photograph are not visible, and Margel states that, even if he had seen the documents in question, either at a trade show or through documents produced in discovery, he had no knowledge that he was not receiving payment for these documents (Declaration of Guy Margel, dated July 16, 2009 (Docket Item 124), ("Margel Decl."), ¶¶ 10, 12).  To this end, he denies ever having a conversation with Tversky wherein he requested payments for Gem Passports, Gem ID cards and Micro Reports (Margel Decl. ¶ 11).

Finally, defendants claim that even if plaintiffs did discover the facts underlying the proposed claims by virtue of the Gershburg Declaration, failure to file the motion to amend until six months later constitutes undue delay (Defs' Mem. at 14).  Plaintiffs do not cite a single case denying a motion to amend based solely on a delay of six months, and courts frequently grant leave to amend after much longer periods of delay. See Rachman Bag Co. v. Liberty Mut. Ins. Co., 46 F.3d 230, 235 (2d Cir. 1995) (leave to amend properly granted after four-year delay); Block v. First Blood Assocs., 988 F.2d 344, 351 (2d Cir. 1993) (same); Richardson Greenshields  Sec., Inc. v. Lau, 825 F.2d 647, 653 n.6 (2d Cir. 1987) (collecting cases where leave to amend granted after delay ranging from two to five years).

25

Indeed, delay alone, in the absence of bad faith or prejudice, is usually not sufficient reason for denying a motion to amend.  Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008); Rachman Bag Co. v. Liberty Mut. Ins. Co., supra, 46 F.3d at 234-35; State Teachers Ret. Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir. 1981).  Thus, the court may "deny leave to amend 'where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice' other parties."  Grace v. Rosenstock, supra, 228 F.3d at 53-54, citing Cresswell v. Sullivan & Cromwell, 922 F.2d 60, 72 (2d Cir. 1990) (emphasis added); see also Commander Oil Corp. v. Barlo Equip. Corp., 215 F.3d 321, 333 (2d Cir. 2000) (permitting amendment of answer to assert additional affirmative defense after a seven-year delay does not constitute an abuse of discretion in the absence of prejudice).

Defendants contend that they will be prejudiced by the proposed amendments because the proposed amendments will require a year of additional discovery, which will be "hugely expensive" and will include the re-opening of at least four depositions (Defs' Mem. at 15-16).  In addition, defendants claim prejudice as a result of plaintiffs' previous summary judgment motion on the breach of contract claim because they took "positions on legal and factual issues" in response to that motion without knowledge of plaintiffs' proposed claims (Defs' Mem. at 16).

26

          In determining whether a party will be prejudiced,
courts "generally consider whether the assertion of the new claim
or defense would '(i) require the opponent to expend significant
additional resources to conduct discovery and prepare for trial;
(ii) significantly delay the resolution of the dispute; or (iii)
prevent the plaintiff from bringing a timely action in another
jurisdiction.'"  Monahan v. New York City Dep't of Corrs., 214
F.3d 275, 284 (2d Cir. 2000), quoting Block v. First Blood
Assocs., supra, 988 F.2d at 350.  In evaluating these factors,
courts consider whether a party has had prior notice of a claim
and whether the claim arises from the same transaction as claims
in the original pleading.  See Monahan v. New York City Dep't of
Corrs., supra, 214 F.3d at 284; Hanlin v. Mitchelson, 794 F.2d
834, 841 (2d Cir. 1986).

          As an initial matter, leave to amend has been denied as
to all claims except for plaintiffs' new breach of contract
theory.  Although plaintiffs are asserting a new theory -- that
defendants falsified reports in order to avoid paying amounts due
under the contract -- it does not prejudice defendants because it
will not result in an undue burden.  See Cartier, Inc. v. Four
Star Jewelry Creations, Inc., 01 Civ. 11295 (CBM), 2004 WL 169746
at *3 (S.D.N.Y. Jan. 28, 2004) (Motley, D.J.), quoting Henry v.
Murphy, M-82, 2002 WL 24307 at *2 (S.D.N.Y. Jan. 08, 2002)
(Keenan, D.J.) ("Prejudice occurs if 'the opposing party would

experience undue difficulty in defending a lawsuit because of a change in tactics or theories on the part of the movant.'"); Lerman v. Chuckleberry Publ'g, Inc., 544 F. Supp. 966, 968 (S.D.N.Y. 1982) (Werker, D.J.), rev'd on other grounds sub nom., Lerman v. Flynt Distrib. Co., Inc., 745 F.2d 123 (2d Cir. 1984) (amendment should not be denied simply because it "may add another issue to the case," absent "specific and compelling allegations of prejudice such as some undue disadvantage in the presentation of a defense to the claims sought to be asserted.")

Contrary to defendants' contentions, amending the complaint to include plaintiffs' new breach of contract theory will not result in any undue burden.  Defendants offer no justification for their statements that defending the proposed new claim may require a year of additional discovery, the reopening of at least four depositions, and great financial outlay.  To the contrary, the addition of this breach of contract theory should not require much in the way of additional time or resources. Plaintiffs' new claim stems from the same agreements that govern their previous claims, with the additional allegation that plaintiffs were entitled to payments for grading certificates issued under names other than "certificate" and issued by entities other than EGL-USA.  Surely, much information pertaining to the construction and performance of these agreements has already been exchanged through discovery.  Moreover, information about

the issuance of various types of certifications by EGL-USA and the companies it controls is already within the defendants' possession.

In any case, the need to conduct additional discovery is not, in itself, sufficient to constitute prejudice.  United States v. Cont'l Ill. Nat'l Bank & Trust Co., 889 F.2d 1248, 1255 (2d Cir. 1989); Middle Atl. Utils. Co. v. S.M.W. Dev. Corp., 392 F.2d 380, 386 (2d Cir. 1968); Town of New Windsor v. Tesa Tuck, Inc., 919 F. Supp. 662, 679 (S.D.N.Y. 1996) (Parker, D.J.); St. Paul Fire & Marine Ins. Co. v. Heath Fielding Ins. Broking Ltd., 91 Civ. 0748 (MJL), 1996 WL 19028 at *7 (S.D.N.Y. Jan. 17, 1996) (Lowe, D.J.); see S.S. Silberblatt, Inc. v. East Harlem Pilot Block--Building 1 Hous. Dev. Fund Co., Inc., 608 F.2d 28, 43 (2d Cir. 1979).  The prejudice that would flow from any additional required discovery can generally be mitigated by adjustments to the discovery schedule.  Middle Atl. Utils. Co. v. S.M.W. Dev. Corp., supra, 392 F.2d at 386 ("The burden of further discovery and motions is not a satisfactory basis to deny the motion to amend.  Such procedural aspects can be regulated and controlled by the trial court."); see St. Paul Fire & Marine Ins. Co. v. Heath Fielding Ins. Broking Ltd., supra, 1996 WL 19028 at *7; Russell v. Hilton Int'l of Puerto Rico, Inc., 93 Civ. 2552 (KMW), 1995 WL 234886 at *1 (S.D.N.Y. Apr. 20, 1995) (Wood,

D.J.); <u>Bankers Trust Co. v. Weinick, Sanders & Co.</u>, 92 Civ. 9127
(PNL), 1993 WL 478124 at *8 (S.D.N.Y. Nov. 12, 1993) (Dollinger,
M.J.); <u>see</u> <u>also</u> <u>A.V. by Versace, Inc. v. Gianni Versace S.p.A.</u>,
87 F. Supp. 2d 281, 299 (S.D.N.Y. 2000) (Leisure, D.J.), <u>citing</u>
<u>Block v. First Blood Assocs.</u>, <u>supra</u>, 988 F.2d at 351 ("allega-
tions that an amendment will require the expenditure of addi-
tional time, effort, or money do not constitute 'undue preju-
dice.'").

          Finally, plaintiffs argue that they will be prejudiced
because, as a result of plaintiffs' previous summary judgment
motion, they "have already been forced to take a position on some
of the facts and issues implicated by Plaintiffs' proposed new
claims without knowing the full breadth of the claims and/or
relief sought against them" (Defs' Mem. at 16).  Defendants do
not state what position they were forced to take in defending
plaintiffs' summary judgment motion or why the amended breach of
contract claim will result in prejudice.  Defendants' position in
opposition to summary judgment was that the contracts at issue
were not royalty agreements because Margel did not hold any of
the relevant trademarks and that Margel itself was in breach of
contract because he had ceased providing consideration and
violated the covenant of good faith and fair dealing (Defendant's
Opposition to Plaintiffs' Motion for Partial Summary Judgment and
Related Relief, dated Oct. 20, 2006 (Docket Item 82) at 1).  It

is difficult to see how defendants' previous positions on the nature of the agreements at issue or Margel's breach of those agreements could prejudice them in defending against a different claim for breach of these agreements. Moreover, a lawsuit is a search for the truth; one party's version of historical facts cannot vary with the opponent's allegations.

Therefore, because I find that plaintiffs' motion to amend was not delayed unduly and that plaintiffs' new theory of breach of contract will not prejudice defendants, leave to amend will not be denied on this ground.

IV. Conclusion

Accordingly, for all the foregoing reasons, plaintiffs' motion for leave to file an amended complaint (Docket Item 109) is granted to the extent it seeks to add a claim for breach of contract based on allegedly false monthly reports issued by EGL-USA and denied in all other respects.

Dated:   New York, New York
         February 8, 2010

                              SO ORDERED

                              HENRY PITMAN
                              United States Magistrate Judge

31

Copies transmitted to:

John Malley, Esq.
Barry Werbin, Esq.
Paul Schafhauser, Esq.
Herrick, Feinstein LLP
2 Park Avenue
New York, New York  10016

Robert E. Hanlon, Esq.
Alston & Bird LLP
90 Park Avenue
New York, New York  10016